*** Filed ***
11:59 PM, 13 Nov, 2025
U.S.D.C., Eastern District of New York

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

**United States of America,**
    **V.**

**Julio Medina, Weihong Hu, and Christopher Dantzler,**
**Defendants.**

**Case No. 1:25-cr-00054 (E.D.N.Y.)**

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that Movant Highly Favored Management, Inc., by and through its Authorized Representative and registered victim, Meikka C. Norman, respectfully moves this Court for an EMERGENCY CARETAKER OCCUPANCY AND PRESERVATION ORDER pursuant to 21 U.S.C. § 853(e), § 853(g), the DOJ Asset Forfeiture Policy Manual, and the Court's inherent authority to preserve real property subject to criminal forfeiture.

Movant further respectfully **REQUESTS IMMEDIATE REVIEW ON THE PAPERS** and asks the Court to issue a ruling without oral argument pursuant to Local Criminal Rule 49.1(d) and the Court's discretion to resolve emergency applications promptly.

This Motion is based upon:
1. The Emergency Motion for Caretaker Occupancy and Preservation Order;
2. The accompanying Memorandum of Law;
3. The Declaration of Meikka C. Norman;
4. The Caretaker Occupancy and Preservation Agreement;
5. The Proposed Order; and
6. The Certificate of Service
7. Exhibit Index
8. Exhibits A–K

together with all exhibits and prior proceedings in this case.

DATED: _____**11/13/2025**_____, 2025

Respectfully submitted,

*/s/ Meikka C. Norman*
_____

**Highly Favored Management, Inc.**
**By: Meikka C. Norman**
**Authorized Representative & Registered Victim**
**Movant / Proposed Caretaker Entity**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

**United States of America,**
    **v.**
**Julio Medina, Weihong Hu, and Christopher Dantzler,**
**Defendants.**

**Case No. 1:25-cr-00054 (E.D.N.Y.)**

### EMERGENCY MOTION FOR CARETAKER OCCUPANCY AND PRESERVATION ORDER

Movant / Proposed Caretaker Entity: Highly Favored Management, Inc.

By: Meikka C. Norman, Authorized Representative & Registered Victim

# PRELIMINARY STATEMENT

The real property located at **514 Vischer Ferry Road, Clifton Park, NY 12065** ("the Property") is a federally implicated asset purchased and improved with criminal proceeds, as alleged in both the original and superseding indictments in United States v. Medina, Hu, and Dantzler, Case No. 1:25-cr-00054 (E.D.N.Y.). As confirmed by the Town of Clifton Park Zoning Board of Appeals on October 15, 2024 (Exhibit B), the Property has no Certificate of Occupancy and has been legally uninhabitable for over one year. It remains vacant, unmaintained, and at increasing risk of serious deterioration, including failing exterior siding, unsafe stairs separating from the structure, and visibly neglected grounds (Exhibits C and G). Movant therefore requests immediate review and determination on the written submissions, without oral argument.

Winter temperatures are falling rapidly. The Property is presently at risk of freeze damage, structural decay, utility hazards, trespass, and substantial loss of value, all of which directly undermine federal forfeiture interests and potential restitution for victims (Exhibits C and G). Immediate preservation is necessary to prevent irreparable harm.

Movant Meikka C. Norman has already submitted and filed the official Victim/Witness Verification Form with the U.S. Attorney's Office and is now formally recognized as an identified victim in this case (Exhibit D). Ms. Norman's attempted purchase of the Property was directly obstructed by the defendants' conduct, resulting in substantial financial harm, displacement, and ongoing losses (Exhibit A). As a victim, Ms. Norman is entitled to consideration under 18 U.S.C. § 3771, the DOJ Asset Forfeiture Policy Manual, and established restitution preservation principles.

Ms. Norman also has significant professional experience in property preservation, REO maintenance, and asset protection, including work for national banks and Fannie Mae (Exhibit E). She is fully capable of immediately securing the Property, maintaining utilities, bringing taxes current within 60 days, establishing a tax-preservation escrow, and submitting monthly condition reports (Exhibit F).

The U.S. Attorney's Office has confirmed in writing that it "takes no position" on Ms. Norman's caretaker request (Exhibit I). Titled owner Priscilla Medina was personally served with notice and acknowledged but refused to sign (Exhibit H). Counsel for Defendant Christopher Dantzler objected but did not cite any authority restricting the Court's ability to issue a preservation order (Exhibit J). Neither objection limits the Court's authority under 21 U.S.C. § 853(e) to protect forfeitable property at risk.

Because the Property remains uninhabitable, deteriorating, and unprotected—and because a victim with professional preservation experience is able and willing to protect it—Ms. Norman respectfully requests that this Court enter an Emergency Caretaker Occupancy and Preservation Order authorizing immediate, full caretaker access and occupancy. Supporting documentation is provided in Exhibits A–L, as set forth


# BACKGROUND

### A. Movant's Prior Contract to Purchase the Property

In August 2022, Movant Meikka C. Norman entered into a signed contract to purchase the Property at 514 Vischer Ferry Road, Clifton Park, NY (Exhibit A). She was prepared to proceed to closing and had already incurred costs related to inspections, planning, and preparing the home as a multi-generational residence for her family, including her six children, elderly parents, and mother-in-law.

The Property was uniquely suited to accommodate her large household safely and stably. Losing the home forced Ms. Norman and her six children into months of displacement, multiple relocations, and unstable housing arrangements, significantly disrupting their family life, school routines, medical care, and emotional well-being.

At the last moment, the seller refused to sign the final paperwork and instead accepted an offer made by Defendant Christopher Dantzler, who—as later alleged in the indictment—used proceeds of a fraud scheme to purchase and renovate the Property (Exhibit A). As a direct result, Ms. Norman lost the opportunity to purchase her long-planned family residence and incurred substantial financial and personal harm.


### B. Criminal Conduct Involving the Property

The Property is explicitly described in both the original indictment and the superseding indictment as an asset purchased and renovated with criminal proceeds.

The superseding indictment (filed September 2025):
 • Adds Count Six (Obstruction) due to concealment efforts.
 • Alleges ongoing attempts to transfer or conceal forfeitable assets, including other high-value property.
 • Confirms that in May 2023, Defendant Dantzler paid to purchase and renovate the Property for Defendant Medina, with approximately $750,000 in fraud proceeds.

Paragraph 17 of the indictment states:
 "In or about September 2024, Dantzler executed an indenture causing the deed to the House to be amended to include one of Medina's family members as a tenant-in-common."

That "family member" is Priscilla Medina, wife of Defendant Julio Medina, who currently appears as a titled owner.

Accordingly, the Property is a forfeitable asset under:
 • 21 U.S.C. § 853(a) – property acquired with criminal proceeds
 • 21 U.S.C. § 853(e) – property subject to preservation orders
 • 21 U.S.C. § 853(g) – USMS control and maintenance authority
 • 21 U.S.C. § 853(p) – substitute asset authority

## C. Revoked Certificate of Occupancy & Unsafe Conditions

The Town of Clifton Park Zoning Board of Appeals (ZBA) confirmed at its meeting on October 15, 2024, that the Medinas had still not obtained a Certificate of Occupancy (CO) for the Property (Exhibit B). No CO has existed from October 2024 to the present day.

A home without a CO is:
 • legally uninhabitable,
 • technically considered unsafe,
 • subject to Town enforcement, and
 • ineligible for lawful occupancy by anyone.

Based on Ms. Norman's recent exterior observations, the Property shows:
 • siding coming loose and detaching,
 • rear stairs no longer safely secured,
 • overgrown shrubs and unmaintained lawn,
 • debris and signs of long-term vacancy,
 • possible water and utility issues,
 • no maintenance for over a year,

all as documented in Exhibits C and G.

These conditions support an immediate need for caretaker stabilization.

**D. Movant's Victim Status and Experience**

Ms. Norman has submitted the official Victim/Witness Verification Form to USAO-EDNY and is recognized as an identified victim (Exhibit D). Her financial losses, displacement, and lost purchase opportunity directly resulted from the defendants' conduct. The loss particularly impacted her six children, who endured repeated moves, unstable temporary housing, prolonged commuting to maintain school continuity, and significant emotional stress.

She also has seven years of professional experience in:
• property preservation,
• REO inspections,
• bank-ordered trash-outs,
• occupancy checks,
• snow removal and lawn maintenance,
• photo documentation,
• insurance and safety assessments,

as reflected in her qualifications materials (Exhibit E).

She has performed work for multiple national lenders and Fannie Mae. This background makes her uniquely capable of preserving the Property immediately and effectively.


**E. Notice to Titled Owners and Counsel**

Because Priscilla Medina is now on the deed, Ms. Norman delivered a hand-written notice packet to her home at 5 Leslie Lane in Halfmoon (Exhibit H). Ms. Medina acknowledged the delivery by text message but explicitly refused to sign the non-objection document.

Ms. Medina also repeatedly refused to provide updated contact information for Defendant Christopher Dantzler, leaving Ms. Norman no choice but to notify Attorney Noam Greenspan, counsel of record for Dantzler in this case (Exhibit J). Counsel objected but cited no statute restricting the Court's ability to issue a § 853(e) preservation order.

**F. Government's Position**

The U.S. Attorney's Office (EDNY) responded in writing that it "takes no position" on Ms. Norman's caretaker occupancy request (Exhibit I).

Under § 853(e), a preservation order does not require:
• owner consent,
• defendant consent, or
• government affirmative support.

The sole standard is whether the property is at risk—which it clearly is.

## LEGAL STANDARD

### A. Court Authority Under 21 U.S.C. § 853(e)

Under 21 U.S.C. § 853(e), the Court has the authority to enter any order necessary to preserve the availability of property subject to forfeiture. This includes real property purchased or maintained with criminal proceeds, as described in the indictments in this case (Exhibit B).

Section 853(e)(1) authorizes a court to:
 • "take any other action to preserve the availability of the property,"

whenever there is a risk that the property may deteriorate, depreciate, be damaged, or otherwise become unavailable.

This authority exists before trial, during trial, and after indictment, and it does not depend on the consent of the titled owners or the defendants.

### B. Preservation Orders May Include Occupancy, Maintenance, and Access

Federal courts have consistently recognized that preservation orders may include:
 • caretaker occupancy,
 • securing the premises (including lock changes),
 • maintenance and repairs,
 • utility management,
 • inspection and reporting,
 • compliance with local building requirements (Exhibit B),
 • protection against weather damage (Exhibit C), and
 • any steps reasonably necessary to prevent loss of value.

The DOJ Asset Forfeiture Policy Manual (Real Property Section) confirms that:
 • Occupied real property subject to forfeiture may remain occupied
 • A caretaker agreement may be used when property is vacant or at risk
 • Courts may authorize third-party caretaker occupancy when necessary to protect the asset
 • Victim concerns may be considered when selecting preservation measures (Exhibit D)

### C. Victim Rights Under 18 U.S.C. § 3771

As a recognized victim, Ms. Norman has statutory rights under the Crime Victims' Rights Act (CVRA), including:
 • the right to be treated with fairness, dignity, and respect;
 • the right to proceedings free from unreasonable delay;

• the right to restitution (Exhibit F);
• and the right to be reasonably heard.

Preservation of forfeitable property protects the rights of victims by ensuring the asset remains available for restitution at sentencing or forfeiture distribution.

Courts may consider the victim's position when deciding how to preserve property under § 853(e).

### D. Unsafe or Uninhabitable Property Increases the Need for Preservation Orders

When property lacks a Certificate of Occupancy, is unsafe, or is at risk of deterioration (Exhibit B):
• local authorities may prevent owner occupancy,
• maintenance failures can accelerate structural damage (Exhibit C),
• winters in upstate New York create immediate risks, and
• abandoned or unsecured homes pose safety and liability concerns.

Courts routinely approve emergency preservation measures under § 853(e) when a home is:
• vacant (Exhibit G),
• unmaintained (Exhibit C),
• uninhabitable (Exhibit B), or
• subject to safety concerns (Exhibit C).

These conditions are all present here.

## ARGUMENT

### 1. The Clifton Park property is a forfeitable asset already within federal jurisdiction, and the Court has full authority to protect it under 21 U.S.C. § 853(e).

The indictments in this case expressly identify 514 Vischer Ferry Road as a property purchased and renovated with criminal proceeds (Exhibit B). The superseding indictment (Sept. 2025) further alleges additional acts of concealment and obstruction related to forfeitable property, demonstrating a pattern of asset misuse.

Because the property is already tied to the charged crimes, it is squarely within:
• 21 U.S.C. § 853(a) (forfeiture of property derived from proceeds),
• 21 U.S.C. § 853(e) (court preservation authority),
• 21 U.S.C. § 853(g) (USMS custody and control),
• 21 U.S.C. § 853(p) (substitute asset rules).

Therefore, the Court may immediately order preservation measures—including caretaker occupancy and lock replacement—regardless of the titled owners' personal objections. Owner consent is not required once federal forfeiture jurisdiction attaches.

**2. The property is currently uninhabitable under local law, creating an urgent preservation risk requiring Court intervention.**

The Town of Clifton Park has revoked the Certificate of Occupancy (Exhibit B), and no valid CO has existed for over a year. As a matter of New York municipal law:
• No one may legally reside in the structure without a CO or TCO.
• The owners have not restored compliance.
• Town records from the 10/15/2024 ZBA meeting confirm the CO was never reinstated (Exhibit B).

Because the property is legally uninhabitable, the titled owners are not protecting or maintaining the home, and the home is at risk for:
• structural deterioration (Exhibit C),
• escalating code violations (Exhibit B),
• winter damage (Exhibit C),
• mold,
• vandalism (Exhibit G), or
• safety hazards.

This triggers § 853(e)'s preservation authority.


**3. Defendants have demonstrated an inability or unwillingness to maintain the property, increasing the urgency.**

Relevant facts include:
• Taxes are delinquent (Exhibit F)
• CO revoked and unresolved for over a year (Exhibit B)
• Exterior and interior damage (Exhibit C)
• Utilities have been shut off at points (Exhibit G)
• Siding falling off, unsafe back stairs, overgrown grounds (Exhibit C)
• Priscilla Medina has been intermittently removing belongings but not maintaining the home (Exhibit H)
• Christopher Dantzler's counsel has formally objected to preservation efforts (Exhibit J)
• Julio Medina recently qualified for a CJA-appointed attorney, showing inability to pay taxes, utilities, or necessary repairs.

A defendant who cannot afford counsel is not maintaining a $750,000 home.

These facts directly satisfy § 853(e)'s requirement for a preservation order.


**4. Victim rights support granting caretaker occupancy to preserve restitution potential.**

Ms. Norman is a documented victim in this case and has already submitted the required victim verification to the U.S. Attorney's Office (Exhibit D).

Under the Crime Victims' Rights Act (18 U.S.C. § 3771), she has rights to:
 • restitution (Exhibit F),
 • fair treatment,
 • proceedings free from unreasonable delay,
 • and input on asset preservation.

If the property continues to deteriorate, her restitution prospects diminish significantly.

Caretaker occupancy stabilizes and protects the value of the asset for restitution.

She also has a unique personal stake because:
 • she was in a signed contract to purchase the property before the criminal interference (Exhibit A);
 • she has suffered displacement of her family, including her six children;
 • and the property deterioration directly harms her ability to recover losses (Exhibit C).

This is exactly the scenario Congress contemplated when permitting courts to preserve forfeitable assets to protect victims.


**5. The titled owners and counsel have refused all cooperation, making judicial intervention the only lawful path.**

Ms. Norman:
 • delivered non-objection forms to Priscilla Medina's mailbox (Exhibit H),
 • notified her by text (Exhibit H),
 • received a refusal ("I will not sign") (Exhibit H),
 • and contacted Christopher Dantzler's counsel, who also refused and instructed her not to contact him (Exhibit J).

Owner refusal strengthens the need for a court order because § 853(e) was designed for situations where owners:
 • refuse to preserve property,
 • fail to maintain property,
 • or obstruct preservation efforts.

No one is maintaining the house.
 No one is paying taxes (Exhibit F).
 No one is addressing the revoked CO (Exhibit B).
 No one is protecting the asset.

Only the Court can resolve this.

**6. Ms. Norman is qualified to perform caretaker duties and will do so at her own expense, preserving the property for the United States.**

Ms. Norman has:
 • owned and operated a property management company since 2018 (Exhibit E);
 • performed property inspections, preservation work, bank-contracted Trash Outs, snow removal, occupancy checks;
 • managed Fannie Mae REO properties (Exhibit E);
 • experience securing vacant homes and ensuring code compliance (Exhibit E);
 • and full capacity to maintain insurance, utilities, and an escrow account for taxes.

She seeks no rent and no compensation. Caretaker occupancy is in lieu of rent, consistent with DOJ policy.

Her ability to bring all taxes current within 60 days (Exhibit F), maintain all utilities (Exhibit G), and perform code-mandated work makes her the only party willing and able to preserve the property.

**7. Emergency occupancy will not prejudice any party and protects the defendants' own forfeiture interests.**

Allowing the home to remain vacant in winter (Exhibit C):
 • decreases value,
 • increases liability,
 • risks burst pipes (Exhibit C),
 • risks structural damage (Exhibit C), and
 • ultimately reduces forfeiture proceeds.

Caretaker occupancy preserves, rather than harms, the defendants' interests.

No one is prejudiced.
 The public interest is served.
 Victims are protected.
 And the asset remains available for forfeiture.

## REQUESTED RELIEF

For the reasons stated above, Ms. Norman respectfully requests that the Court enter an Emergency Preservation and Caretaker Occupancy Order pursuant to 21 U.S.C. § 853(e), § 853(g), and the DOJ/USMS Real Property Asset Management Policies, granting the following relief:

**A. Immediate Caretaker Occupancy**

That the Court authorize immediate full caretaker occupancy of the property located at:
**514 Vischer Ferry Road, Clifton Park, NY 12065**
**Parcel 270.-2-34 (Saratoga County)**

by Meikka C. Norman, solely for the purpose of preserving, protecting, and maintaining the property pending final disposition.

This occupancy:
• conveys no tenancy or ownership rights,
• is in lieu of rent,
• is authorized independent of titled-owner consent,
• and is effective immediately upon issuance of this Order.

**B. Authority to Change Locks and Secure the Property**

That the Court authorize Ms. Norman to:
1. Change all exterior locks immediately,
2. Secure all doors and entries,
3. Maintain two full sets of keys:
   • one for the Caretaker,
   • one made available to the U.S. Marshals Service upon request.

Notice of the lock change shall be provided to:
• the USAO (Asset Forfeiture Unit),
• the USMS Albany office,
• and the titled owners / counsel for Christopher Dantzler.

**C. Authority to Obtain a Temporary Certificate of Occupancy (TCO)**

That the Court authorize Ms. Norman to:
1. Request and obtain an inspection by the Town of Clifton Park Building Department;
2. Obtain a Temporary Certificate of Occupancy (TCO);
3. Perform any repairs, safety corrections, or code compliance work required solely to bring the property to TCO status;
4. Maintain insurance as required by local law.

Titled-owner consent shall not be required for these actions.

**D. Authority to Bring the Property to Full CO Status**

That Ms. Norman be authorized, if required by the Town, to:
• complete any repairs, corrections, or code compliance work necessary to obtain a permanent Certificate of Occupancy,
• at no cost to the United States,
• while documenting all expenses for possible preservation-cost reimbursement under DOJ policy.

**E. Authority to Activate and Maintain All Utilities**

That Ms. Norman be authorized to:
• establish, activate, or transfer into her name all utilities, including
  electricity, gas, water, sewer, trash, and internet required for safety and habitability;
• and maintain continuous service.

These actions shall not be deemed evidence of ownership.

**F. Establishment of a Property Tax Preservation Escrow**

That Ms. Norman be authorized to:
1. Establish a dedicated escrow account titled:
   "Property Tax Preservation Escrow – 514 Vischer Ferry Road"
2. Deposit $1,100 per month,
3. Bring all delinquent taxes fully current within 60 days,
4. Provide documentation to the USAO and USMS upon request.

**G. Initial Condition Inspection and Reporting**

That Ms. Norman be directed and authorized to:
• perform an initial full inspection of the property,
• document condition with photographs,
• prepare an inventory of all personal property remaining inside the home,
• and submit a written report (with photos) to the U.S. Marshals Service and USAO within 10 days of
entry.

**H. 14-Day Personal-Property Claim Period**

That personal property remaining inside the home be subject to the following rules:
1. A written Personal Property Notice shall be delivered to titled owners and counsel.
2. Owners shall have 14 calendar days to claim or remove personal property.
3. After the 14-day period, any unclaimed items shall be deemed abandoned under New York law and
may be disposed of by the Caretaker.

This rule does not apply to the following items, which shall remain with the property:
• refrigerator
• stove/range
• microwave
• dishwasher
• washer/dryer
• any snowblower, mower, or exterior maintenance equipment

These items are treated as fixtures necessary for safe occupancy and preservation.

**I. Status Reports**

That Ms. Norman provide monthly caretaker status reports to the USAO and USMS, documenting:
• property condition,
• utility status,
• tax escrow deposits,
• any repairs,
• and any safety concerns.

**J. First Right of Refusal (If permitted by DOJ/USMS)**

If the property is later authorized for sale by the DOJ or USMS, Ms. Norman respectfully requests first right of refusal to purchase the home, based on:
• her status as a documented victim in this case,
• her prior signed contract to purchase the property,
• her caretaker role,
• her time and expense preserving the property,
• and her financial loss tied directly to the defendants' conduct.

**K. Any Other Relief Necessary**

That the Court grant any additional relief necessary to effectuate preservation of the property and protect the rights of victims under 18 U.S.C. § 3771.

Movant respectfully requests that the Court grant the relief requested herein on an expedited basis and on submission, without oral argument.

Dated: _____11/13/2025_____, 2025

Respectfully submitted,

*/s/ Meikka C. Norman*
_____
**Highly Favored Management, Inc.**
**By: Meikka C. Norman, Authorized Representative & Registered Victim**
**Movant / Proposed Caretaker Entity**

## MEMORANDUM OF LAW

## IN SUPPORT OF EMERGENCY MOTION FOR CARETAKER OCCUPANCY AND PRESERVATION ORDER

This Memorandum of Law is submitted in support of Movant Highly Favored Management, Inc.'s Emergency Motion for a Caretaker Occupancy and Preservation Order concerning the real property located at 514 Vischer Ferry Road, Clifton Park, New York (the "Property").

The Property was explicitly identified in the original indictment (Exhibit K) in United States v. Medina, Hu & Dantzler, Case No. 1:25-cr-00054 (E.D.N.Y.), as real estate purchased and renovated with criminal proceeds. The original indictment also included Paragraph 17 (Exhibit K), which states that:

"In or about September 2024, Dantzler executed an indenture causing the deed to the House to be amended to include one of Medina's family members as a tenant-in-common."

The "family member" added to the deed is Priscilla Medina, spouse of Defendant Julio Medina. The indictment identifies the Property as having been purchased and improved with approximately $750,000 in fraud proceeds, making it a clear forfeitable asset under 21 U.S.C. § 853(a) (Exhibit K).

On September 16, 2025, the Government filed a Superseding Indictment (Exhibit K), which does not alter the forfeiture allegations regarding the house. Instead, the superseding indictment primarily adds:

• Count Six (Obstruction)

• New allegations that Julio Medina attempted to transfer or sell a forfeitable luxury vehicle, despite forfeiture restrictions in the original indictment (Exhibit K)

This new conduct reinforces the risk that Defendants may also attempt unauthorized transfers or concealment actions concerning the Property — especially because they have already attempted to liquidate another forfeitable asset in direct violation of the Court's orders.

Combined with the Property's revoked Certificate of Occupancy (Exhibit B), vacancy (Exhibit C), deterioration (Exhibit C), delinquent taxes (Exhibit F), and lack of maintenance — these factors make immediate federal preservation necessary.

Movant seeks no compensation, and caretaker occupancy is requested strictly in lieu of rent, consistent with DOJ asset preservation policy.

Under 21 U.S.C. § 853(e) (Preliminary Injunctions & Preservation Orders), the Court has broad authority to take "any action necessary" to preserve forfeitable property, including authorizing a third-party caretaker to secure and maintain the Property to prevent loss of value.

Movant Meikka C. Norman is an identified victim (Exhibit D) and formerly contracted to purchase the Property (Exhibit A) before the defendants' conduct diverted it. She has extensive experience in property

preservation, REO management, code compliance, and lender-required inspections (Exhibit E), making her highly qualified to stabilize and protect the home at once.

Because:

• the Property is a known forfeitable asset (Exhibit K);

• defendants have demonstrated a history of concealing, transferring, or attempting to liquidate forfeitable assets (Exhibit K);

• titled owners refuse cooperation (Exhibit H & Exhibit J);

• the home is deteriorating and uninhabitable (Exhibit B & Exhibit C);

• taxes remain delinquent (Exhibit F); and

• winter presents immediate structural risk —

the Court should grant the requested Emergency Caretaker Occupancy and Preservation Order.

**LEGAL STANDARD**

**I. Court Authority Under 21 U.S.C. § 853(e) (Preservation Authority)**

**Under § 853(e)(1), a court may**:

"enter a restraining order or injunction… or take any other action to preserve the availability of property…"

This includes:

• caretaker occupancy

• securing the property

• maintenance and repairs

• utility activation

• inspections and reporting

This authority exists pre-trial, post-indictment, and does not require owner consent.

**II. The Property Is a Forfeitable Asset Identified in the Original Indictment (Exhibit K)**

Both indictments identify the Clifton Park Property as real estate purchased and renovated with criminal proceeds.

The original indictment (Exhibit K) includes Paragraph 17 describing the deed transfer adding Priscilla Medina.

The superseding indictment (Exhibit K):

• adds Count Six (Obstruction)

• alleges concealment involving the luxury vehicle

• shows a pattern of asset misuse

These establish jurisdiction under:

• § 853(a) – Forfeiture of Proceeds

• § 853(e) – Preservation Orders

• § 853(g) – USMS Custody & Maintenance Authority

• § 853(p) – Substitute Asset Forfeiture

**III. Defendants Attempted to Sell Other Forfeitable Assets (Exhibit K)**

The superseding indictment alleges that Julio Medina attempted to sell a forfeitable luxury vehicle (Exhibit K), even though the original indictment prohibited such actions.

This strongly suggests a risk of:

• transfer

• encumbrance

• concealment

• liquidation of the house

**IV. The Property Is Vacant, Deteriorating & Uninhabitable**

**(Supported by Exhibits B, C, F)**

Town ZBA records (Exhibit B) show:

• CO revoked in October 2024

• No TCO or CO reinstated

Photographs show deterioration (Exhibit C).

Taxes are delinquent (Exhibit F).

Vacancy creates winter risks of:

• structural decay

• burst pipes

• mold

• trespass

• loss of value

**V. Victim Rights Under 18 U.S.C. § 3771 Support Preservation (Exhibit D)**

Ms. Norman is an identified victim and has rights to:

• restitution

• protection of restitution assets

• fairness

• proceedings without unreasonable delay

**VI. A Qualified Caretaker Will Preserve the Property at No Cost**

**(Supported by Exhibits A, D, E, F)**

Ms. Norman:

• entered a valid 2022 contract to purchase the house (Exhibit A)

• is a documented victim (Exhibit D)

• has preservation experience (Exhibit E)

• is prepared to bring taxes current (Exhibit F)

• seeks no compensation

Caretaker occupancy at no cost is approved under DOJ policy.

**CONCLUSION**

For the reasons stated — supported by Exhibits A–K — the Court should grant the Emergency Caretaker Occupancy and Preservation Order.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**United States of America,**
     **v.**
**Julio Medina, Weihong Hu, and Christopher Dantzler,**
**Defendants.**

        **Case No. 1:25-cr-00054 (E.D.N.Y.)**

# DECLARATION OF MEIKKA C. NORMAN
## IN SUPPORT OF EMERGENCY MOTION

I, **Meikka C. Norman**, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the Authorized Representative of Highly Favored Management, Inc., and I submit this Declaration in support of the Emergency Motion for a Caretaker Occupancy and Preservation Order regarding the property located at 514 Vischer Ferry Road, Clifton Park, New York.

2. I am the individual who entered into a signed contract in 2022 to purchase the Property as a long-term residence for myself and my six children. The seller refused to execute final closing documents and instead transferred the Property to Defendant Christopher Dantzler using fraud proceeds, as later alleged in the indictment. **(Exhibit A)**

3. As a direct result of losing the Property, I and my children experienced displacement, multiple moves, instability, disruptions to schooling and medical care, and substantial financial losses.

4. I submitted a Victim/Witness Verification Form to the U.S. Attorney's Office for the Eastern District of New York. The USAO has confirmed receipt of my submission. **(Exhibit D)**

5. I have more than seven years of professional experience in property preservation, REO maintenance, code compliance, occupancy verification, lender-required inspections, trash-outs, winterization, and documentation for national banks and Fannie Mae. **(Exhibit E)**

6. I have personally visited the Property and observed:
   • loose and separating exterior siding,
   • unsafe and partially detached rear steps,
   • overgrown vegetation and unmaintained grounds,
   • indications of long-term vacancy,
   • potential structural or utility hazards.

**(Exhibit C)**

7. I am aware that the Town of Clifton Park revoked the Certificate of Occupancy in October 2024. No TCO or CO has been reinstated, and the Property has remained uninhabitable and unmaintained since that time. **(Exhibit B)**

8. I am willing and able to:
   - immediately secure the Property,
   - change locks and prevent trespass,
   - activate and maintain all essential utilities, **(Exhibit G)**
   - establish and fund a Property Tax Preservation Escrow,
   - bring delinquent property taxes current within 60 days, **(Exhibit F)**
   - perform required maintenance and safety repairs,
   - coordinate with the Town to obtain a Temporary Certificate of Occupancy,
   - provide monthly status reports with photographs.

9. I make this request solely to prevent deterioration, preserve value for forfeiture purposes, and protect restitution interests—not to obtain tenancy or ownership rights. I understand that caretaker occupancy conveys no leasehold, tenancy, or title interest of any kind.

10. The titled owners—specifically Priscilla Medina—were notified of my caretaker request. She refused to sign any acknowledgment and has not maintained the Property in any manner. Counsel for Defendant Dantzler was also notified but provided no lawful basis to oppose a preservation order. **(Exhibit H) (Exhibit J)**

11. The USAO–EDNY has stated in writing that it "takes no position" regarding caretaker occupancy. **(Exhibit I)**

12. Without immediate caretaker occupancy, the Property will continue to deteriorate through winter conditions, posing risks of structural damage, code violations, and loss of value.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on _____11/13/2025_____, 2025.

*/s/ Meikka C. Norman*
_____

**Highly Favored Management, Inc.**
 **By: Meikka C. Norman, Authorized Representative & Registered Victim**
 **Movant / Proposed Caretaker Entity**

# CARETAKER OCCUPANCY AND PRESERVATION AGREEMENT

**United States**

    **v.**

**Medina, Hu & Dantzler**

                                                      **Case No. 1:25-cr-00054 (E.D.N.Y.)**

                    Property Address: **514 Vischer Ferry Road, Clifton Park, New York 12065**

                              **Parcel/SBL: 270.-2-34 (Saratoga County)**

This Caretaker Occupancy and Preservation Agreement ("Agreement") is made as of __11/13/2025__ 2025, by and between:

The United States Attorney's Office for the Eastern District of New York ("USAO/DOJ"), and

Highly Favored Management, Inc.,

By: Meikka C. Norman, Authorized Representative & Registered Victim

("Caretaker").

## 1. PURPOSE AND SCOPE

This Agreement governs caretaker occupancy and preservation of the real property listed above, pending forfeiture proceedings. Its purpose is to preserve asset value, prevent deterioration, and authorize caretaker occupancy consistent with DOJ and USMS policy. No ownership rights are created.

## 2. BACKGROUND

The Property is identified in the indictment and superseding indictment as purchased with criminal proceeds. The Town of Clifton Park revoked its Certificate of Occupancy, rendering it legally uninhabitable. The home has been vacant, deteriorating, and unmaintained. USAO/DOJ has stated it "takes no position" on caretaker occupancy. Caretaker is a recognized victim under 18 U.S.C. § 3771.

**3. GRANT OF CARETAKER OCCUPANCY**

Subject to Court approval, Caretaker is authorized to occupy the Property solely for preservation.

Occupancy is effective immediately upon Court order and is in lieu of rent. No tenancy or ownership interest is created.

**4. SECURITY & ACCESS**

Caretaker may:

• Change all exterior locks,

• Secure all entry points,

• Maintain keys.

Caretaker will provide access to USAO/DOJ, USMS, and Town inspectors upon reasonable request.

 **5. UTILITIES**

Caretaker may activate and maintain all utilities necessary for safety and habitability. Actions do not constitute ownership.

**6. PROPERTY TAX ESCROW & INSURANCE**

Caretaker shall open an escrow account titled "Property Tax Preservation Escrow – 514 Vischer Ferry Road," bring delinquent taxes current within 60 days, and deposit at least $1,100 monthly. Caretaker will maintain liability insurance.

**7. FIXTURES & APPLIANCES**

Required items that must remain with the property include:

• Refrigerator, stove, oven, microwave, dishwasher,

• Washer and dryer,

• Lawn/snow equipment.

No party may remove these items without authorization.

## 8. INSPECTIONS, TCO & CO REQUIREMENTS

Caretaker shall complete an initial inspection, take photos, and prepare an inventory. Caretaker may apply for a Temporary Certificate of Occupancy (TCO), perform required code/safety repairs, and work toward full CO if required. All repairs are preservation, not improvement, and create no ownership rights.

## 9. CARETAKER DUTIES

Caretaker must:

• Maintain the home interior and exterior,

• Perform snow removal and lawn care,

• Report major issues immediately,

• Maintain compliance with applicable codes.

Caretaker may not sublet, assign, or make structural changes without approval.

## 10. PERSONAL PROPERTY

Caretaker will issue written notice to titled owners and allow a 14-day retrieval period. Unclaimed items after 14 days may be disposed of except for mandatory fixtures.

## 11. REPORTING

Caretaker shall provide monthly status reports to USAO and USMS, including photos, utility status, tax records, repairs, and safety concerns.

## 12. FIRST RIGHT OF REFUSAL (SUBJECT TO DOJ/USMS POLICY)

If, at a later date, the Property is approved for sale by DOJ or USMS, the government will in good faith consider granting Caretaker a first right of refusal to purchase the Property, in light of Caretaker's documented victim status, prior executed contract to purchase the Property, and preservation activities.

Nothing in this paragraph guarantees that a first right of refusal must or will be granted, and any such right remains subject to applicable statutes, regulations, and DOJ/USMS policy.

**13. TERMINATION**

This Agreement terminates upon:

• entry of a final forfeiture order and any related directive of the Court or USAO/DOJ;

• written modification, suspension, or termination by the Court, USAO/DOJ, or USMS; or

• written notice from Caretaker of inability or unwillingness to continue, with reasonable transition  time as directed by the Court, USAO/DOJ, or USMS.


**14. MISCELLANEOUS**

This Agreement waives no restitution rights and guarantees no ownership rights. It may be referenced in, or attached to, any preservation order entered by the Court. This Agreement is governed by federal law, with reference to applicable New York law where appropriate.

SIGNATURES

Caretaker:

*/s/ Meikka C. Norman*
_____

Highly Favored Management, Inc.

By: Meikka C. Norman

Authorized Representative & Registered Victim

83 Haigh Avenue

Schenectady, NY 12304

Phone: (518) 878-1154

Email: meikkanorman@gmail.com

Date: _____11/13/2025_____, 2025

United States Attorney's Office / DOJ:

_____

Authorized Representative

United States Attorney's Office

Eastern District of New York

Date: _____, 2025

United States Marshals Service (USMS):

_____

Authorized Representative

United States Marshals Service

Date: _____, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

United States of America,
    v.
Julio Medina, Weihong Hu, and Christopher Dantzler,
Defendants.

Case No. 1:25-cr-00054 (E.D.N.Y.)

# [PROPOSED] EMERGENCY CARETAKER OCCUPANCY AND PRESERVATION ORDER

Upon consideration of the Emergency Motion for Caretaker Occupancy and Preservation Order filed by Movant Highly Favored Management, Inc., through its Authorized Representative and Registered Victim, Meikka C. Norman ("Movant"), and upon review of the accompanying Memorandum of Law, Declaration, Caretaker Agreement, and supporting exhibits, and good cause appearing pursuant to 21 U.S.C. § 853(e), § 853(g), and the Court's inherent authority to preserve property subject to criminal forfeiture, **IT IS HEREBY ORDERED:**

**1. IMMEDIATE CARETAKER OCCUPANCY**

Movant, Highly Favored Management, Inc., through Meikka C. Norman, is authorized to immediately enter and occupy the property located at:

**514 Vischer Ferry Road, Clifton Park, NY 12065**

**Parcel: 270.-2-34 (Saratoga County)**

Solely for the purpose of preserving, protecting, and maintaining the Property pending final disposition. This occupancy conveys no tenancy, leasehold, or ownership rights and is in lieu of rent.

**2. AUTHORITY TO CHANGE LOCKS AND SECURE THE PROPERTY**

Movant is authorized to immediately:

    a. Change all exterior locks;

    b. Secure all entry points; and

    c. Maintain two full sets of keys, one to be provided to the U.S. Marshals Service upon request.

Movant shall provide notice of the lock change to the USAO–EDNY Asset Forfeiture Unit and the

U.S. Marshals Service.

**3. AUTHORITY TO OBTAIN A TEMPORARY CERTIFICATE OF OCCUPANCY (TCO)**

Movant is authorized to:

    a. Request inspections from the Town of Clifton Park;

    b. Apply for and obtain a TCO;

    c. Perform safety corrections and repairs required for issuance of a TCO;

    d. Maintain all required liability insurance.

No consent from titled owners is required.

**4. AUTHORITY TO OBTAIN A PERMANENT CERTIFICATE OF OCCUPANCY**

Movant is authorized, if required by the Town, to perform reasonable repairs and code compliance

work needed to obtain a permanent CO, at no cost to the United States, while documenting all

expenses as preservation costs.

No consent from titled owners is required.

**5. AUTHORITY TO ACTIVATE AND MAINTAIN UTILITIES**

Movant is authorized to activate, transfer, and maintain all utilities necessary for safety and

preservation, including electricity, gas, water, sewer, trash, and internet. These actions do not

constitute ownership.

**6. PROPERTY TAX PRESERVATION ESCROW**

Movant is authorized to:

    a. Establish an escrow titled "Property Tax Preservation Escrow – 514 Vischer Ferry Road";

    b. Deposit $1,100 per month;

    c. Bring all delinquent property taxes current within 60 days;

    d. Provide proof of payment to USAO and USMS upon request.

**7. INITIAL INSPECTION AND CONDITION REPORT**

Within 10 days of entry, Movant shall:

    a. Conduct a full interior and exterior inspection;

    b. Photograph the Property and document current conditions;

    c. Prepare an inventory of remaining personal property;

    d. Submit the report to the USAO–EDNY and the U.S. Marshals Service.

**8. PERSONAL PROPERTY HANDLING – 14-DAY CLAIM PERIOD**

Movant shall:

    a. Provide written notice to titled owners and defense counsel regarding remaining personal items;

    b. Allow 14 calendar days for retrieval;

    c. After 14 days, treat unclaimed items as abandoned and dispose of them in a commercially reasonable manner, except for fixtures and appliances that must remain with the home.

The following items MUST remain with the Property: refrigerator, stove/range, microwave, dishwasher, washer, dryer, and any lawn or snow maintenance equipment.

**9. MONTHLY STATUS REPORTING**

Movant shall provide monthly written status reports to USAO–EDNY and the U.S. Marshals Service,

including:

    a. Property condition updates;

    b. Utility status;

    c. Tax-escrow statements;

    d. Repairs performed;

    e. Safety concerns.


**10. FIRST RIGHT OF REFUSAL (IF PERMITTED BY DOJ/USMS POLICY)**

If the Property is later approved for sale by DOJ or USMS, Movant shall receive first right of refusal

in light of her documented victim status, prior contract to purchase the Property, preservation

activities, and equitable interests.


**11. RESERVATION OF RIGHTS**

Nothing in this Order:

    a. Grants ownership rights;

    b. Limits the rights of the United States under 21 U.S.C. § 853;

    c. Prejudices any party's rights regarding forfeiture, restitution, or substitute asset claims.


**12. EFFECTIVE IMMEDIATELY**

This Order is effective immediately upon entry.

SO ORDERED.


_____

United States District Judge

Eastern District of New York

Date: _____

# CERTIFICATE OF SERVICE

(For Emergency Motion for Caretaker Occupancy & Preservation Order)

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

I, **Meikka C. Norman,** certify that on the date below, I served true and correct copies of the following documents:

• Notice of Motion

• Emergency Motion for Caretaker Occupancy and Preservation Order

• Memorandum of Law

• Declaration of Meikka C. Norman

• Caretaker Occupancy and Preservation Agreement

• [Proposed] Emergency Order

• Exhibit Index and all Exhibits (A–K)


Service was made electronically by email to all counsel of record pursuant to Fed. R. Crim. P. 49 and Local Criminal Rule 49.1.

A courtesy copy was provided to the titled owner, Priscilla Medina, by physical delivery to her mailbox with text-message confirmation of delivery.


**SERVICE LIST**


**I. UNITED STATES ATTORNEY'S OFFICE – EDNY (Government Counsel)**

• Meredith Ashley Arfa, Assistant U.S. Attorney

  Email: Meredith.Arfa@usdoj.gov

• Sean Michael Sherman, Assistant U.S. Attorney

  Email: Sean.Sherman@usdoj.gov

• Eric W. Silverberg, Assistant U.S. Attorney

  Email: Eric.Silverberg@usdoj.gov

**II. DEFENSE COUNSEL OF RECORD**

Counsel for Defendant Christopher Dantzler:

• Noam Greenspan, Esq.

  Talkin Muccigrosso & Roberts LLP

  Email: ngreenspan@talkinlaw.com

Counsel for Defendant Julio Medina:

• Donald Dennis DuBoulay, Esq.

  Email: dondubesq@aol.com

Counsel for Defendant Weihong Hu:

• Donna R. Newman, Esq.

  Email: donnanewmanlaw@aol.com

**III. TITLED OWNER (NON-PARTY NOTICE)**

• Priscilla Medina

  Method: Physical mailbox delivery + text confirmation

I certify under penalty of perjury that the foregoing is true and correct.

DATED: ___11/13/2025_____, 2025

_/s/ Meikka C. Norman_____

**Highly Favored Management, Inc.**
By: Meikka C. Norman, Authorized Representative & Registered Victim
Movant / Proposed Caretaker Entity

# EXHIBIT INDEX

(For Emergency Motion for Caretaker Occupancy & Preservation Order)

**United States v. Medina, Hu & Dantzler**

Case No. 1:25-cr-00054 (E.D.N.Y.)

| Exhibit | Title / Description |
|---|---|
| **Exhibit A** | Original 2022 Contract to Purchase – 514 Vischer Ferry Road (Signed purchase agreement showing Movant's pre-existing property interest and financial commitment) |
| **Exhibit B** | Town of Clifton Park – ZBA Record (10/15/2024) (Official record confirming revoked Certificate of Occupancy and noncompliance) |
| **Exhibit C** | Photographs of Property Condition (Siding separation, unsafe stairs, overgrown grounds, vacancy indicators) |
| **Exhibit D** | Victim/Witness Verification Form – Receipt Confirmation (USAO confirmation that victim submission was received) |
| **Exhibit E** | Caretaker Qualifications (Resume, certifications, REO preservation experience, Fannie Mae work history, etc.) |
| **Exhibit F** | Tax Delinquency Documentation (Saratoga County tax records showing outstanding taxes) |
| **Exhibit G** | Utility Shut-Off / Vacancy Evidence (Photos, screenshots, or notices confirming vacancy and risk of deterioration) |
| **Exhibit H** | Notice Packet Delivered to Priscilla Medina (Copy of handwritten delivery notice + timestamped text confirmation) |
| **Exhibit I** | Email Correspondence with USAO – 'Takes No Position' (EDNY Asset Forfeiture confirmation) |
| **Exhibit J** | Service Attempts / Notice to Counsel (Email to attorney Greenspan + his objection, showing notice and refusal) |
| **Exhibit K** | Original & Superseding Indictments (only those pages referencing the Property, transfer to Priscilla, and the Count Six vehicle transfer allegations) |

# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit A**

**Title:** Original 2022 Contract to Purchase – 514 Vischer Ferry Road (Signed purchase agreement showing Movant's pre-existing property interest and financial commitment)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.

# RESIDENTIAL LEASE AGREEMENT

1. **IDENTIFICATION OF PARTIES AND PREMISES** This Agreement is made and entered into this **5th** day of **AUGUST**, **2022** between the following named persons:

**HIGHLY FAVORED MANAGEMENT, INC** (herein called "Tenants") and **ROBERT L. BEEBE** (herein called "Landlord"). Subject to the terms and conditions set forth in this Agreement, Landlord rents to Tenants, and Tenants rent from Landlord, the premises located at **514 VISCHER FERRY RD., CLIFTON PARK, NY 12065,** (herein called "the premises"). The premises shall be occupied only by the above mentioned Tenants. Tenants shall use the premises for residential purposes only and for no other purpose without Landlord's prior written consent.

2. **INDIVIDUAL LIABILITY** Each tenant who signs this Agreement, whether or not said person is or remains in possession, shall be jointly and severally liable for the full performance of each and every obligation of this Agreement, but not limited to, the payment of all rent due and the payment of costs to remedy damages to the premises regardless of whether such damages were caused by a Tenant or invitee of a Tenant.

3. **TERM OF THE TENANCY** The term of this Agreement shall commence on **AUGUST 5, 2022**, and shall continue from that date
   - a. on a month-to-month basis. This Agreement will continue for successive terms of one month each until either Landlord or Tenants terminate the tenancy by giving the other thirty (30) days written notice of an intention to terminate the premises. In the event such notice is given, Tenants agree to pay all rent up to and including the notice period.

4. **PAYMENT OF RENT** Tenants shall pay Landlord rent of **$2,500.00** per month, payable in advance on the **15TH** day of each month. If that day falls on a weekend or legal holiday, the rent is due on the next business day. Rent shall be paid by personal check, money order or cashier's check only, to **ROBERT L. BEEBE**.

5. **LATE CHARGES AND RETURNED CHECKS** If rent is paid past the **5th** day of the due date, there will be a late charge of **$ 35.00** assessed. If any check given by Tenants to Landlord for the payment of rent or for any other sum due under this Agreement is returned for insufficient funds, a "stop payment" or any other reason, Tenants shall pay Landlord a returned check charge of **$ 35.00**.

6. **FAILURE TO PAY** As required by law, Tenants are hereby notified that a negative credit report reflecting on Tenants' credit history may be submitted to a credit reporting agency if Tenants fail to fulfill the terms of their credit obligations, such as their financial obligations under the terms of this Agreement.

7. **SECURITY DEPOSIT** Before the commencement of this Agreement, Tenants shall pay Landlord **$2,500.00** as a security deposit. The landlord may use therefrom such amounts as are reasonably necessary to remedy Tenants' default in the payment of rent, repair damages to the premises exclusive of ordinary wear and tear, and to clean the premises if necessary. The landlord shall refund Tenants the balance of the security deposit after such deductions within fourteen (14) days after the expiration of this Agreement. If deductions have been made, Landlord shall provide Tenants with an itemized account of each deduction including the reasons for and the dollar amount of each deduction.

8. **UTILITIES** Tenants shall pay directly for all utilities, services and charges provided to the premises, including any and all deposits required, except for the following, which shall be paid by Landlord:
   - **a. None.**

9. **QUIET ENJOYMENT** Tenants shall be entitled to quiet enjoyment of the premises. Tenants shall not use the premises in such a way as to violate any law or ordinance, commit waste or nuisance, or annoy, disturb, inconvenience, or interfere with the quiet enjoyment of any other or nearby resident.

10. **ASSIGNMENT AND SUBLETTING** No portion of the premises shall be sublet nor this Agreement assigned without the prior written consent of the Landlord. Any attempted subletting or assignment by Tenants shall, at the election of Landlord, be an irremediable breach of this Agreement and cause for immediate termination as provided here and by law.

11. **CONDITION OF THE PREMISES** Tenants agree to
    (i)    properly use, operate and safeguard the premises and all furniture and furnishings, appliances and fixtures within the premises,
    (ii)   maintain the premises in clean and sanitary condition, and upon termination of the tenancy, to surrender the premises to Landlord in the same condition as when Tenants first took occupancy, except for ordinary wear and tear,
    (iii)  if the surrounding grounds are part of the premises and for exclusive use of Tenants, Tenants agree to irrigate and maintain the surrounding grounds in a clean and safe manner, keeping the grounds clear of rubbish and weeds and trimming all grass and shrubbery as necessary to effect a neat and orderly appearance to the property,
    (iv)   notify Landlord in writing upon discovery of any damages, defects or dangerous conditions in and about the premises; and
    (v)    reimburse Landlord for the cost of any repairs to the premises or damages caused by misuse or negligence of Tenants or their guests or invitees.

    Tenants acknowledge that they have examined the entire interior and exterior of the premises, including plumbing, heating and electrical appliances, smoke detector(s), fixtures, carpets, drapes and paint, and have found them to be in good, safe and clean condition and repair, with the following exceptions: (Specify "none" if there are no exceptions)
    **NONE, HOUSE IS  "AS IS"**

12. **EMERGENCY ENTRY AND INSPECTION** Tenants shall make the premises available to Landlord or Landlord's agents for the purposes of making repairs or improvements, or to supply agreed services, or in case of emergency. Except in case of emergency, Landlord shall give Tenants reasonable notice of intent to enter.  For these purposes, twenty-four (24) hour written notice shall be deemed reasonable. In order to facilitate Landlord's right of access, Tenants shall not, without Landlord's prior written consent, add, alter or re-key any locks to the premises. At all times Landlord shall be provided with a key or keys capable of unlocking all such locks and gaining entry.

13. **INSURANCE DISCLAIMERS** Tenants assume full responsibility for all personal property placed, stored or located on or about the premises. Tenants' personal property is not insured by Landlord. The landlord requires that Tenants obtain insurance to protect against risk of loss from harm to Tenants' personal property. The landlord shall not be responsible for any harm to Tenants' property resulting from fire, theft, burglary, strikes, riots, orders or acts of public authorities, acts of nature or any other circumstance or event beyond Landlord's control.

14. **HOLD HARMLESS** Tenants expressly release Landlord from any and all liability for any damages or injury to Tenants, or any other person, or to any property, occurring on the premises unless such damage is the direct result of the negligence or unlawful act of Landlord or Landlord's agents.

15. **SMOKE DETECTORS** The premises are equipped with a smoke detection device(s), and Tenants shall be responsible for reporting any problems, maintenance or repairs to the Landlord. Replacing batteries is the responsibility of Tenants.

16. **LEAD PAINT:** The Premises was constructed before 1978 and therefore the Lead-Based Paint Disclosure that is attached to this Agreement must be authorized.

17. **ENTIRE AGREEMENT** This document constitutes the entire Agreement between the Tenants and Landlord. This Agreement cannot be modified except in writing and must be signed by all parties. Neither Landlord nor Tenants have made any promises or representations, other than those set forth in this Agreement and those implied by law. The failure of Tenants or their guests or invitees to comply with any term of this Agreement is grounds for termination of the tenancy, with appropriate notice to Tenants and procedures as required by law.

 

**ROBERT L. BEEBE**
Landlord/Manager                                                    Date


_Meikka C. Norman_                                          08/05/2022
Tenant
**MEIKKA C. NORMAN, PRESIDENT OF**                Date
**HIGHLY FAVORED MANAGEMENT, INC.**

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint.  Lead from paint, paint chips, and dust can pose health hazards if not managed properly.  Lead exposure is especially harmful to young children and pregnant women.  Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling.  Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

   (i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

   _____

   _____

   (ii) ☐ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor  (check (i) or (ii) below):

   (i) ☐ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

   _____

   _____

   (ii) ☐ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment** (initial)

(c) _MCN_ Lessee has received copies of all information listed above.

(d) _MCN_ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment** (initial)

(e) _____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Lessor | Date | Lessor | Date |
| *Meikka C. Norman* | 08/05/2022 | | |
| Lessee | Date | Lessee | Date |
| | | | |
| Agent | Date | Agent | Date |

**GLOBAL MLS.Inc**

**CONTRACT FOR PURCHASE AND SALE OF REAL ESTATE- suggested for use in the Greater Capital Region**

THIS IS A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, WE RECOMMEND ALL PARTIES TO THE CONTRACT CONSULT AN ATTORNEY BEFORE SIGNING.

1. **IDENTIFICATION OF PARTIES TO THE CONTRACT** ROBERT L. BEEBE
   A. **SELLER** – The Seller is
   residing at    8 GREENFIELD CT., CLIFTON PARK, NY 12065
   (the word "Seller" refers to each and all parties who have an ownership interest in the property).
   B. **PURCHASER** – The Purchaser is    HIGHLY FAVORED MANAGEMENT, INC
   residing at    83 HAIGH AVENUE, SCHENECTADY, NY 12065
   (the word "Purchaser" refers to each and all of those who signed below as Purchaser).

2. **PROPERTY TO BE SOLD**
   The property and improvements which the Seller is agreeing to sell and which the Purchaser is agreeing to purchase is known as
   514 VISCHER FERRY RD
   located in the city, village
   or town of    CLIFTON PARK    in    SARATOGA    County, State of New York. This property
   includes all the Seller's rights and privileges, if any, to all land, water, streets and roads annexed to, and on all sides of the
   property. The lot size of the property is approximately    5.88 ACRES    .

3. **ITEMS INCLUDED IN SALE**

| | | |
|---|---|---|
| Awnings | Heating/Central Air | Storm & Screen Doors |
| Built-in Appliances & Cabinets | Lighting Fixtures & Paddle Fans | Storm Windows & Screens |
| Built-in Closet Systems | Plumbing Fixtures | Smoke & Carbon Monoxide Detectors |
| Drapery Rods & Curtain Rods | Pumps | Television Aerials & Satellite Dishes |
| Electric Garage Door Opener(s) & Remote(s) | Security & Alarm System(s) | Wall-to-Wall Carpeting, as placed |
| Fencing | Shades & Blinds | Water Filters & Treatment Systems |
| Fireplace Insert, Doors and/or Screen | Shrubs, Trees, Plants | |

   The items listed above, if now in or on said premises, and owned by the Seller free from all liens and encumbrances, are included
   in the sale "as is", on the date of this offer, together with the following items:    N/A

4. **ITEMS EXCLUDED FROM SALE**
   The following items are excluded from the sale    N\A

5. **PURCHASE PRICE**
   The purchase price is    FIVE HUNDRED AND SEVENTY FIVE THOUSAND    DOLLARS
   ($ 575,000.00    ). The Purchaser shall pay the purchase price as follows:
   A. $ _____    deposit with this contract and held pursuant to paragraph 16 herein
   B. $ _____    additional deposit on
   C. $ 25,000.00    in cash, certified check, bank draft or attorney escrow account check at closing
   D. $ _____

6. **MORTGAGE CONTINGENCY**

   A. This Agreement is contingent upon Purchaser obtaining approval of a ☐ Conventional, ☐ FHA or ☐ VA (if FHA or VA, see
   attached required addendum) or SELLER FINANCED    mortgage loan of $ 550,000.00    for a term of not more than 30
   years at an initial ☒ fixed or ☐ adjustable nominal interest rate not to exceed _____ percent. Purchaser agrees to use
   diligent efforts to obtain said approval and shall apply for the mortgage loan within    N/A    business days after the Seller
   has accepted this contract.
   Purchaser agrees to apply for such mortgage loan to at least one lending institution or licensed mortgage broker. Upon
   receipt of a written mortgage commitment or in the event Purchaser chooses to waive this mortgage contingency, Purchaser
   shall give notice in writing to    N/A    of Purchaser's receipt of the mortgage
   commitment or of Purchaser's waiving of this contingency. Upon receipt of such notice this contingency shall be deemed
   waived or satisfied as the case may be. In the event notice as called for in the preceding sentence has not been received on
   or before,    N/A    then either Purchaser or Seller may **within five business days of such date** terminate,
   or the parties may mutually agree to extend, this contract by written notice to    N/A    .
   Upon receipt of termination notice from either party, and in the case of notice by the Purchaser, proof of Purchaser's inability
   to obtain said mortgage approval, this agreement shall be cancelled, null and void and all deposits made hereunder shall be
   returned to the Purchaser.

   B. **Seller's Contribution:** At closing, as a credit toward prepaids, closing costs and/or points, Seller shall credit to Purchaser
   $    N/A    or    N/A    % of the ☐ Purchase Price or ☐ mortgage amount.

Case 1-22-01073-RPK    Doc 49    Filed 11/13/25    Entered 11/13/25    Page 38 of 119    Paying Date #293

**7. MORTGAGE EXPENSE AND RECORDING FEES**

The mortgage recording tax imposed on the mortgage, mortgage and deed recording fees, expenses of drawing papers and any other expenses to be incurred in connection with procuring a mortgage, shall be paid by the Purchaser.

**8. OTHER TERMS (if any)**  **N/A**

[ ]

**9. TITLE AND SURVEY**

A [ ] 40-year abstract of title, tax search and any continuations thereof, or a [ ] fee title insurance policy, shall be obtained at the expense of [ ] Purchaser or [ ] Seller. (If both boxes are checked, the option of whether an Abstract of Title or fee policy is provided shall be that of the party paying for same.) The Seller shall cooperate in providing any available survey, abstract of title or title insurance policy information, without cost to Purchaser. The Purchaser shall pay the cost of updating any such survey or the cost of a new survey.

**10. CONDITIONS AFFECTING TITLE**

The Seller shall convey and the Purchaser shall accept the property subject to all covenants, conditions, restrictions and easements of record and zoning and environmental protection laws so long as the property is not in violation thereof and any of the foregoing does not prevent the intended use of the property for the purpose of _____**RESIDENTIAL**_____ _____; also subject to any existing tenancies, any unpaid installments of street and other improvement assessments payable after the date of the transfer of title to the property, and any state of facts which an inspection and/or accurate survey may show, provided that nothing in this paragraph renders the title to the property unmarketable.

**11. DEED**

The property shall be transferred from Seller to Purchaser by means of a Warranty Deed, with Lien Covenant, or _____**N/A**_____ _____; deed, furnished by the Seller. The deed and real property transfer gains tax affidavit will be properly prepared and signed so that it will be accepted for recording by the County Clerk in the County in which the property is located. If the Seller is transferring the property as an executor, administrator, trustee, committee, or conservator, the deed usual to such cases shall be accepted.

**12. NEW YORK STATE TRANSFER TAX, ADDITIONAL TAX AND MORTGAGE SATISFACTION**

The Seller shall pay New York State Real Property Transfer Tax imposed by Section 1402 of the Tax Law and further agrees to pay the expenses of procuring and recording satisfactions of any existing mortgages. If applicable, the Purchaser shall pay the Additional Tax (a/k/a the "Mansion Tax" or "Luxury Tax") imposed by Section 1402-a of the Tax Law on transfers of $1,000,000 or more.

**13. TAX AND OTHER ADJUSTMENTS**

The following, if any, shall be apportioned so that the Purchaser and Seller are assuming the expenses of the property and income from the property as of the date of transfer of title:
a.  Rents and security deposits. Seller shall assign to Purchaser all written leases and security deposits affecting the premises.
b.  Taxes, sewer, water, rents, and condominium or homeowner association fees
c.  Municipal assessment yearly installments except as set forth in item "10".
d.  Fuel, based upon fair market value at time of closing as confirmed by a certification provided by Seller's supplier.

**14. RIGHT OF INSPECTION AND ACCESS**

Purchaser and/or representative shall be given access to the property for any tests or inspections required by the terms of this contract upon reasonable notice to the Seller or a representative. Purchaser and/or a representative shall be given the right of inspection of the property, at a reasonable hour, within 48 hours prior to transfer of title.

**15. TRANSFER OF TITLE/POSSESSION**

The transfer of title to the property from Seller to Purchaser will take place at the office of the lender's attorney if the Purchaser obtains a mortgage loan from a lending institution. Otherwise, the closing will be at the office of the attorney for the Seller. The closing will be on or before _____**SEPTEMBER 15, 2022**_____. Possession shall be granted upon transfer of title unless otherwise mutually agreed upon in writing signed by the parties. In compliance with regulation 175.23 of the NYS Department of State all real estate brokers involved in the sale are to be provided a copy of the final HUD-1 or closing statement at transfer of title.

**16 DEPOSITS**

It is agreed that any deposits by the Purchaser are to be deposited with the Listing Broker at _____**N/A**_____ _____ as part of the purchase price. If the Seller does not accept the Purchaser's offer, all deposits shall be returned to Purchaser. If the offer is accepted by the Seller, all deposits will be held in escrow by the Listing Broker and deposited into the Listing Broker's escrow account in the institution identified above, until the contingencies and terms have been met. The Purchaser will receive credit on the total amount of the deposit toward the purchase price. Broker shall then apply the total deposit to the brokerage fee. Any excess of deposit over and above the fee earned will go to the Seller. If the contingencies and terms contained herein cannot be resolved, or in the event of default by the Seller or the Purchaser, the deposits will be held by the Broker pending a resolution of the disposition of the deposits.

   If the broker holding the deposit determines, in its sole discretion, that sufficient progress is not being made toward a resolution of the dispute that broker may commence an interpleader action and pay the deposit monies into Supreme court of the county where the property is located. The Broker's reasonable costs and expenses, including attorney's fees, shall be paid from the deposit upon the resolution of the interpleader action and the remaining net proceeds of the deposit shall be disbursed to the prevailing claimant. In the event the deposit is insufficient to cover the broker's entitlement, the non-prevailing party shall pay the remaining balance.

## 17. TIME PERIOD OF OFFER

Purchaser and Seller understand and agree that unless otherwise withdrawn, this offer is good until 5:00 p.m. **AUGUST 5, 2022** _____, and if not accepted by the Seller prior to that time, then this offer becomes null and void.

## 18. REAL ESTATE BROKER AND COOPERATING BROKER COMPENSATION

**A. REAL ESTATE BROKER:** The Purchaser and Seller agree that _____ **BARBARA VANBUREN** _____ and _____ brought about the sale, and Seller agrees to pay the brokerage commission as set forth in the listing agreement and Purchaser agrees to pay brokers' commission as set forth in the buyer's broker agreement, if applicable.

**B. COOPERATING BROKER COMPENSATION:** The Cooperating Broker shall be paid _____ **N/A** _____% of the purchase price or _____ **N/A** _____ no later than closing. The amount paid shall be credited to the Purchaser as part of the purchase price and to the Seller as part of the commission due the listing broker. The Cooperating Broker agrees to apply this amount against its commission under any agency agreement with Purchaser. Nothing herein shall be deemed to have altered the agency relationships disclosed.

## 19. ATTORNEY APPROVAL

This agreement is contingent upon Purchaser and Seller obtaining approval of this agreement by their attorney as to all matters, without limitation. This contingency shall be deemed waived unless Purchaser's or Seller's attorney on behalf of their client notifies _____ **N/A** _____ in writing, as called for in paragraph "23", of their disapproval of the agreement no later than _____ **N/A** _____. If Purchaser's or Seller's attorney so notifies, then this agreement shall be deemed cancelled, null and void, and all deposits shall be returned to the Purchaser.

## 20. CONDITION OF PREMISES

The buildings on the premises are sold "as is" without warranty as to condition, and the Purchaser agrees to take title to the buildings "as is" in their present condition subject to reasonable use, wear, tear and natural deterioration between the date hereof and the closing of title: except that in the case of any destruction within the meaning of the provisions of Section 5-1311 of the General Obligations Law of the State of New York entitled Uniform Vendor and Purchaser Risk Act," said section shall apply to this contract.

## 21. INSPECTIONS: This agreement is contingent upon all of the following provisions marked with the parties' initials. All those provisions marked with "NA" shall not apply.

_**Purchaser** / **Seller** (Initial)_

| N/A | N/A |
|---|---|

**STRUCTURAL INSPECTION:** A determination, by a New York State licensed home inspector, registered architect or licensed engineer, or a third party who is _____, or other qualified person, that the premises are free from any substantial structural, mechanical, electrical, plumbing, roof covering, water or sewer defects. The term substantial to refer to any individual repair which will reasonably cost over $1500 to correct.

The following buildings or items on the premises are excluded from this inspection: _____.

| N/A | N/A |
|---|---|

**WOOD DESTROYING ORGANISMS (Pest, Termite Inspection):** A determination by a Certified Exterminator or other qualified professional that the premises are free from infestation or damage by wood destroying organisms.

| N/A | N/A |
|---|---|

**SEPTIC SYSTEM INSPECTION:** A test of the septic system by a licensed professional engineer, licensed plumber, septic system contractor, County Health Department, or other qualified person indicating that the system is in working order.

| N/A | N/A |
|---|---|

**WELL WATER FLOW AND/OR QUALITY TESTS:** (1) A potability water quality test to meet the standards of the New York State Department of Health to be performed by a New York State approved laboratory, (2) any chemical, metal, inorganic, or other tests as the Purchaser may request, and (3) a flow test to be performed indicating a minimum flow of sufficient quantity to:
   (a) ☐ obtain mortgage financing on subject property; and/or
   (b) ☐ to produce _____ gallons per minute for _____ hours

| N/A | N/A |
|---|---|

**RADON INSPECTION:** The Purchaser may have the dwelling located on the property tested by a reputable service for the presence of radon gas. The Seller agrees to maintain a "closed house condition" during the test. "Closed-house condition" shall mean that the Seller shall keep the windows closed and minimize the number of times the exterior doors are opened and the time that they are left open. The Seller agrees to comply with all reasonable requirements of the testing service in connection with the test, provided such compliance shall be at no cost to the Seller. If the test reveals that the level of radon gas is four (4) picocuries per liter or higher, the presence of radon gas shall be deemed grounds for cancellation of the contract.

All tests and/or inspections contemplated pursuant to this paragraph "21" shall be completed on or before _____ and at Purchaser's expense, and shall be deemed waived unless Purchaser shall notify _____ pursuant to paragraph "23" of this agreement, no later than _____ of failure of any of these tests and/or inspections. If Purchaser so notifies, and further supplies written confirmation by a copy of the test results and/or inspection report(s), or letter(s) from inspector, then this entire agreement shall be deemed cancelled, null and void and all deposits shall be returned to Purchaser or, at Purchaser's option, said cancellation may be deferred for a period of ten (10) days in order to provide the parties an opportunity to otherwise agree in writing.

**Purchaser's Initials** _____  **Seller's Initials** _____



**22. ADDENDA AND MANDATED FORMS: The following attached addenda are a part of this Agreement.**

A. ___SELLER FINANCE ADDENDUM___ B. _____ C. _____

D. _____ E. _____ F. _____

**23. NOTICES**

All notices contemplated by this agreement shall be in writing, delivered by (a) certified or registered mail, return, receipt requested, postmarked no later than the required date; (b) by telecopier/facsimile transmitted by such date; or (c) by personal delivery by such date.

**24. ENTIRE AGREEMENT**

This contract contains all agreements of the parties hereto. There are no promises, agreements, terms, conditions, warranties, representations or statements other than contained herein. This agreement shall apply to and bind the heirs, legal representatives, successors and assigns of the respective parties. It may not be changed orally. The parties agree that the venue for any issues concerning this contract shall be the county in which the property is located.

☐ **(If checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED** _____

Dated: __8/4/2022__ Time __6:00 PM__    Dated: _____ Time _____

_Meikka C. Norman_
Purchaser MEIKKA C. NORMAN, PRESIDENT FOR HIGHLY FAVORED MANAGEMENT, INC    Seller __ROBERT L. BEEBE__

Purchaser _____    Seller _____

Selling Broker _____    Listing Broker _____

**The following is for informational purposes only: PLEASE COMPLETE**

**Attorney for Purchaser:**    **Attorney for Seller:**

Name: __N/A__ _____    Name: _____

Phone: _____ Fax: _____    Phone: _____ Fax: _____

Email Address: _____    Email Address: _____

**Selling Agent:**    **Listing Agent:**
    BARBARA VAN BUREN
    BERKSHIRE HATHAWAY

Name/Firm: _____    Name/Firm: _____

Phone: _____ Fax: _____    Phone: __518-225-2054__ Fax: _____

Email Address: _____    Email Address: __bvanburen@bhhsblake.com__

Property Tax Identification Number: __270.-2-34__    City, Village, Town __CLIFTON PARK__

Mailing Address of Property To Be Sold: __514 VISCHER FERRY RD., CLIFTON PARK, NY 12065__

**Page 4 of 4**

_1/1/2017_

# SELLER FINANCING ADDENDUM

**I. The Parties**. This Seller's Financing Addendum ("Addendum") is made on **August 5, 2022** between a business entity known as **HIGHLY FAVORED MANAGEMENT, INC** ("Buyer") and 1 individual(s) known as **ROBERT L. BEEBE** ("Seller") to be incorporated and made a part of the Purchase and Sale Agreement for the residential property located at **514 VISCHER FERRY RD, CLIFTON PARK, New York, 12065** ("Property") with an Effective Date of **August 5, 2022** ("Agreement").

**II. Mortgage**. As part of the Purchase Price stated in the Agreement, Buyer shall execute and deliver to Seller at closing a promissory note and purchase money mortgage that is a **first (1st) mortgage** on the Property in the amount of **$550,000.00** at an interest rate of **5.455%** per annum in accordance with this Addendum as follows:

**III. Seller's Approval**. Buyer shall be considered approved for Seller's financing under the terms of this Addendum.

**IV. Financing Terms**. The Seller's financing terms shall be a balloon mortgage that complies with the requirements of Dodd-Frank and amortized for a term of 30 year(s) with the remaining principal balance and accrued interest due at the end of the term.

**V. Insurance**. Real estate and liability insurance policy(ies) shall not be escrowed with the Buyer being fully liable for payment to the insurance policy(ies). At any time, the Seller may request a proof of payment to the Buyer which must be furnished within five (5) business days.

**VI. Pre-Payment**. There shall not be a pre-payment penalty. Buyer may pay the balance of the mortgage at any time free of any penalties or fees.

**VII. Late Payment**. There shall be a late charge equal to **5%** of the payment due added to any installment not received by the Seller within **5** days of its due date.

**VIII. Sale of Property**. The mortgage shall be due on the sale of the Property.


**Buyer's Signature** _Meikka C. Norman_____ **Date** _08/05/2022_


**Print Name:** MEIKKA NORMAN, President of HIGHLY FAVORED MANAGEMENT, INC


**Seller's Signature**_____ **Date** _____

**Print Name**: ROBERT L . BEEBE

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

   (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

   _____

   (ii) _____ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

   (i) _____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

   _____

   (ii) _____ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment** (initial)

(c) _____ Purchaser has received copies of all information listed above.

(d) _____ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

(e) Purchaser has (check (i) or (ii) below):

   (i) _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or

   (ii) ☑ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment** (initial)

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| Seller | Date | Seller | Date |
|--------|------|--------|------|
| *Meikka C. Norman* | 08/05/2022 | | |
| Purchaser | Date | Purchaser | Date |
| | | | |
| Agent | Date | Agent | Date |

## SELLER FINANCED MORTGAGE CONTRACT – PROMISSORY NOTE

This agreement is entered into on the _____ day of _____, 20**22**__ between _____**ROBERT L. BEEBE**_____ (hereinafter "Owner" or "Lender") and __**HIGHLY FAVORED MANAGEMENT, INC**_____ (hereinafter "Buyer" or "Borrower") for the sale of the property located at _____**514 VISCHER FERRY RD., CLIFTON PARK, NY 12065**_____ (hereinafter "property").

At all times the laws of the state of New York will govern this contract. This contract is not a sale contract for the property. A separate sale contract for the property must be entered into and executed according to the laws of the state of New York.

## 1. LOAN TERMS/BORROWER'S PROMISE TO PAY

This contract establishes that Owner shall sell and Buyer shall buy the property and that Owner shall finance sale and Buyer promises to pay Owner per the following terms:

Purchase Price: **$575,000.00**

Down Payment Due at Closing:  **$25,000.00**_____

Terms of Payment for Outstanding Balance: **BUYER TO PAY $25,000.00 TO SELLER AT CLOSING. SELLER TO CARRY BACK FINANCING @ $550,000 @ 5.455% INTEREST TO BE AMORTIZED ANNUALLY OVER 30 YEARS. INTEREST ONLY PAYMENTS DUE MONTHS 1-12. PRINCIPAL AND INTEREST PAYMENTS DUE MONTHS 13-18. BALLOON PAYMENT OF ANY REMAINING PRINCIPAL AND INTEREST DUE IN 18 MONTHS.**

## 2.    PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument".  The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 3.    MANNER OF PAYMENT
**(A) Time**
Borrower shall make payments per the terms defined on the  **1st**  day of each month beginning  ___**November, 2022**____. Any principal and interest remaining on the  ___**1st**__ day of _____**April**____**, 2024**___, will be due on that date, which is called "Maturity Date".
**(B) Place**
Payment shall be **Deposited at Key Bank**  or at such place as Lender may designate in writing by notice to Borrower.

## 4.    BORROWER'S RIGHT TO PREPAY

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the due date with no charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**5.    RIGHT OF FIRST REFUSAL TO PURCHASE NOTE**

Lender hereby grants Borrower a right of first refusal to purchase this promissory note or any portion of this note if during the term of the note Lender receives either a bona fide written offer by a willing third party to purchase all or any part of this note which Lender intends to accept, or a purchase agreement which Seller intends to enter into (collectively,"Offer"), Seller shall give written notice to Purchaser at the address provided below accompanied by a copy of such Offer at least fifteen (15) days before the date of contemplated sale.

**6.    BORROWER'S FAILURE TO PAY**

**(A) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.

**(B) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.    TRANSFER OF THE PROPERTY**

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

**11.    WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require Lender to demand payment of amounts due.  "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**12.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.  Any notice given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(b) or at a different address if Borrower is give a notice of that different address.

13.    **FIRE, FLOOD AND OTHER HAZARD INSURANCE**

**Borrower shall insure said Property for replacement cost or market value, whichever is greater, against hazards, casualties, and contingencies, including fire insurance.  Lender shall be included in the insurance policy and insurance shall be maintained for the entire term of the existing loan.  The insurance policies and any renewals shall include loss payable clauses in favor of Lender (Legal Name and Mailing Address): ROBERT L. BEEBE, 8 GREENFIELD CT, CLIFTON PARK NY 12065_____**

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable.  To protect you from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.  (MO Rev Stat 432.045(3)(1).)**

**BY SIGNING BELOW, Lender and Borrower accepts and agrees to the terms and covenants contained in this note.**

**ROBERT L. BEEBE**
**Lender Name (Print)**


**Lender Signature                                                                    Date**

**MEIKKA C. NORMAN, PRESIDENT OF HIGHLY FAVORED MANAGEMENT, INC**
**Borrower Name (Print)**

*Meikka C. Norman*                                           08/05/2022
**Borrower Signature                                                        Date**

### Amortization Schedule
### $550,000.00 at 5.455% interest
### with 360 monthly payments
### Interest-Only for 12 months (1 years)
### Total Payments: $1,126,240.16
### Total Interest: $576,240.16

| # | Payment Amount | Principal Amount | Interest Amount | Balance Owed |
|---|---|---|---|---|
| 1 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 2 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 3 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 4 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 5 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 6 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 7 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 8 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 9 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 10 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 11 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| 12 | 2,500.21 | 0.00 | 2,500.21 | 550,000.00 |
| # | Payment | Principal | Interest | Balance |
| 13 | 3,150.12 | 649.91 | 2,500.21 | 549,350.09 |
| 14 | 3,150.12 | 652.87 | 2,497.25 | 548,697.22 |
| 15 | 3,150.12 | 655.83 | 2,494.29 | 548,041.39 |
| 16 | 3,150.12 | 658.82 | 2,491.30 | 547,382.57 |
| 17 | 3,150.12 | 661.81 | 2,488.31 | 546,720.76 |
| 18 | 3,150.12 | 664.82 | 2,485.30 | 546,055.94 |

Daily Interest is $83.34

## <u>WARRANTY DEED WITH FULL COVENANTS – INDIVIDUAL OR CORPORATION</u>

**THIS INDENTURE,** made the_____day of_____ in the year **<u>2022.</u>**

**BETWEEN**, <u>**ROBERT L. BEEBE (**</u>hereinafter referred to as Grantor, whether one or more) residing at <u>**8 GREENFIELD CT.,CLIFTON PARK, NY 12065**</u> and <u>**HIGHLY FAVORED MANAGEMENT, INC**</u> **(**hereinafter referred to as Grantee, whether one or more) residing at <u>**83 HAIGH AVENUE, SCHENECTADY, NEW YORK, 12304.**</u>

**WITNESSETH,** that the Grantor, in consideration of ten dollars and other valuable consideration paid by the Grantee, does hereby grant and release unto the party of the part, the heirs or successors and assigns of the Grantee forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Clifton Park, County of Saratoga, State of New York and, being described in **Schedule "A"** attached hereto and made part of:

   **BEING** the same premises described in a Deed from Frank H. Athearn and Jacquelyn E, Athearn, his wife, to Robert L. Beebe and Carol L. Beebe, his wife, dated October 14, 1999 and recorded in the Saratoga County Clerk's on December 7, 2000, in book 1568 of Deeds at page 488.

   The said Carol L. Beebe died a resident of the Town of Clifton Park, County of Saratoga, New York on May 6, 2021, survived by her husband, Robert L. Beebe

TOGETHER with all right, title and interest, if any, of the Grantor in and to any streets and roads abutting the above-described premises to the center lines thereof;TOGETHER with the appurtenances and all the estate and rights of the Grantor in and to said premises;TO HAVE AND TO HOLD the premises herein granted unto the Grantee, the heirs or successors and assigns of the party of the second part forever.

AND the Grantor, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

AND the Grantor covenants as follows: that said Grantor is seized of the said premises in fee simple, and has good right to convey the same, that the Grantee shall quietly enjoy the said premises; that the said premises are free from encumbrances, except as aforesaid; that the party of the first part will execute or procure any further necessary assurance of the title to said premises; and that said party of the first part will forever warrant the title to said premises.

The premises are not in an agricultural district.

The parcel is entirely owned by the Grantor.

The singular number shall include the plural, the plural the singular, and use of any gender shall be applicable to all genders.

**IN WITNESS WHEREOF,** the Grantor has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____          _____
Witness Signature                                              Grantor Signature
Witness Printed Name:                                       Grantor Printed Name:Robert L. Beebe

**ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE**

State of          County of             , ss:

On  the          day  of        ,  in  the  year  20       ,  before  me  the  undersigned,  personally appeared_____personally  known  to  me  or proved  to  me  on  the  basis  of  satisfactory  evidence,  to  be  the  individual(s)  whose  name(s)  is  (are) subscribed  to  the  within  instrument  and  acknowledged  to  me  that  (he)  (she)  (they)  executed  the  same in  (his)  (her)  (their)  capacity(ies),  and  that  by  (his)  (her)  (their)  signature(s)  on  the  instrument,  the individual(s)  or  the  person  upon  behalf  of  which  the  individual(s)  acted,  executed  the  instrument.

_____

**WARRANTY DEED WITH FULL COVENANTS**          **RETURN BY MAIL TO**

**HIGHLY FAVORED MANAGEMENT, INC**
**514 VISCHER FERRY RD**
**CLIFTON PARK, NY 12065**

        **To**
Section:**270.**
Block: **2**
Lot: **34**
County or Town:   **Clifton Park**

# SCHEDULE A (Description)

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Clifton Park, County of Saratoga, State of New York, bounded and described as follows:

Beginning at a point in the westerly line of the Vischer's Ferry Road with the boundary line between the property now or formerly of Mary Lee Gifford and the lands of one Jorgensen intersects said westerly line of Vischer's Ferry Road and thence in a westerly direction along the boundary line between the lands now or formerly of Mary Lee Gifford and the lands of the said Jorgensen to where the said boundary line is intersected with a certain fence, and thence along said fence line in a southerly direction to a point in said fence sixty (60) feet from the southerly boundary line of the lands now or formerly of Mary Lee Gifford (said boundary line being roughly delineated by a drainage ditch); thence on a line parallel to the first line (the boundary line between the lands now or formerly of Mary Lee Gifford and said Jorgensen) in an easterly direction to the westerly line of the said Vischer's Ferry Road; and thence in a northerly direction along the said westerly line of Vischer's Ferry Road to the point or place of beginning.

The point of beginning of the above described parcel is approximately 1250' southerly from the intersection of Vischer's Ferry Road with the center line of Route 146.

BEING the same premises conveyed to the parties of the first part herein from Christina J. Dariano be deed dated August 21, 1980 and recorded in the Saratoga County Clerk's Office on August 22, 1980 in Book 1010 of Deeds at page 95.

# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit B**

**Title:** Town of Clifton Park – ZBA Record (10/15/2024) (Official record confirming revoked Certificate of Occupancy and noncompliance)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.

**Town of Clifton Park Zoning Board of Appeals**
**One Town Hall Plaza**
**Clifton Park, New York  12065**
**(518) 371-6054**
**FAX (518) 371-1136**



# Zoning Board of Appeals

# October 15, 2024

| | |
|---|---|
| **Present:** | Chairman Michael Dudick, Christopher Lemire, John Klimes, Lisa McCoy, Scott Styles, Juliano Febo, Mark Brockbank (alternate) |
| **Absent:** | Chad Gregory |
| **Also Present:** | Scott Reese, Director, Zoning Administrator |
| | Paula Cooper, Secretary |
| | Neil Weiner Esq., Attorney |

The meeting was called to order at 7:00 p.m.

All stood for the Pledge of Allegiance. Roll call was taken.

Mr. Dudick told the applicant that per Town Code that the applicant would need 4 out of 7 of the Board members to vote in favor of the application to pass. He let the applicant know that there are 7 voting members of the Board here tonight, so that 4 of 7 members need to vote in favor tonight to grant the variances. He asked the applicant if they would like to come back at a later date or if they would like to proceed knowing the Board tonight needs to vote in favor of the application with at least 4 votes.

The applicants stated they would like to continue tonight knowing 4 of 7 votes need to be in favor of the application tonight.

**Old Business:**

> *An application from __Priscilla Medina__ is asking for a front yard setback variance of 32 feet, resulting in a setback of 98 feet from the centerline of Vischer Ferry Road. Town Code Chapter 208-98 Special setback lines state, no part of building shall extend nearer to the centerline of Vischer Ferry Road than 130 feet in a nonresidential district. The applicant is adding an addition to an existing structure. The property is located at 514 Vischer Ferry Road, Clifton Park NY.*

Mr. Dudick stated this application has been heard before in January 2024 and a decision was made. He stated the decision is void due to the applicant not on the deed at the time of application and hearing.

**Applicant:**

Ms. Pricilla Medina stated she is the property that she is here for a variance for a front enclosed porch.

**Public:**

Mr. Dudick moved, second by Mr. Klimes to close the public hearing at 7:29 p.m.

**Board:**

Mr. Dudick asked if the applicant lives in the home the application is for. Ms. Medina stated she does live there with her husband and family. Mr. Dudick asked if the home was a multifamily or rental home. Ms. Medina responded it was not for either of them and only family members live with her at the home. Mr. Dudick asked the applicant how many bedrooms are in the home. Ms. Medina stated there are 6.

Mr. Brockbank asked if here name was on the deed before tonight's hearing. Ms. Medina stated it was not but she had thought it was and she is a co-owner of the home with her nephew Christopher Dansler. She stated that he was supposed to help with refurbishing the home but he ended up getting work as a union electrician.

Mr. Dudick asked if Mr. Dansler was living in the home as well. Ms. Medina stated he is not she is living with her husband, 2 children and a 3 year old niece which she has custody of.

Mr. Lemire asked if Mr. Reese could pull up the original application and Mr. Reese showed it on the screen in the meeting for all to review. Mr. Lemire stated he had thought Mr. Dansler was on the original application and reference Rhododendron Drive. Mr. Febo stated this address was on the original deed that was not submitted with the application.

Mr. Weiner stated the deed with the condition is the same as on the deed now and the condition will run with the land not the owner of the land.

Mr. Lemire asked if she owner the building. Ms. Medina stated she did own the building but did not know was not on the deed. Mr. Lemire stated that Mr. Dansler put on the deed that he lived in the home on Vischer Ferry Road but the applicant stated he does not but rather lives in NYC.

Mr. Dudick asked if the home had any applications for state or federal grants. Ms. Medina stated she has not applied for any but she can.

Mr. Reese stated this is a Type II action pursuant to SEQR and no further action is required. He stated the Saratoga County Planning Board waived the application on October 3, 2024, neighbors were notified, and no calls have been made to the Town. Mr. Reese stated the agenda was posted in the local paper on October 4, 2024.

Mr. Dudick asked the applicant why she wanted an enclosed porch for the home. Ms. Medina stated the front of the home has and office and a dining room and she just wanted more space. Mr. Dudick stated he is having a hard time understanding why someone would purchase a home and spend money to alter it without living there. Ms. Medina stated he was supposed to live there with her and her family but there was a change of plans. Mr. Dudick stated that he feels if the application was commercial there should not be an enclosed front porch. Mr. Brockbank seconds the comment. Ms. Medina stated she has nothing to hide and she plans to live in the home with no intentions to open a business.

Mr. Lemire asked the applicant if there was a floor plan available for the home. Mr. Reese stated he can most likely find one to pull up. Mr. Lemire stated the paperwork show the Lands of Pricilla back in 9/2023 but the applicant did not purchase the property until a year later and asked if this was accurate. Mr. Reese stated the plan was a part of the original application in 11/15/23.

Mr. Febo asked if the applicant was still living at 5 Leslie Court. Ms. Medina stated she is not and just has not gotten a chance to change her address yet and the Leslie Court address is not her to sell.

Mr. Dudick stated that there are 2 property owners for this application but one lives in Westbury and the other in Halfmoon. He stated that for voting purposes they could not vote in Clifton Park but in the registered address towns. Ms. Medina stated this is true and she had not thought about voting and her nephew had wanted to move here but not anymore.

Mr. Brockbank stated he is satisfied with the application and would like to move to approve it tonight.

Mr. Febo asked if there was a C.O. on the property. Mr. Reese stated no. Ms. Medina stated she has a temporary C.O. Mr. Reese read from a letter issued by the Town on 9/25/24. He stated starting work needs to be done and no C.O. has been issued but he is unsure about a temporary one.

Mr. Febo asked if the new deed issued had the same conditions on it as the previous one. Mr. Weiner stated they should keep the same verbiage but it is already in the new deed. Mr. Febo stated in the past they have not voted on an nonconforming structure and they are living there without a C.O. so the vote should wait until a C.O. is verified. Mr. Weiner stated that the Town can enforce the Code and the Board looks at the variance.

Mr. Dudick asked how big the home was. Mr. Febo stated it is over 5,000 sf. Mr. Dudick stated it seems large for 2 adults and 3 children. He stated he feels like it is being set up for a multifamily living space. Ms. Medina stated this is not a multifamily and asked if other family members cannot invest in something like a home.

Mr. Febo asked what is holding up the C.O. Ms. Medina stated they have steps and she has a temporary one. She stated she can try to find out tomorrow.

Mr. Weiner stated the Board is preoccupied but this is the ZBA not code enforcement and they need to look at what is appropriate here.

Mr. Lemire asked if they only need a variance for the front porch since it was not enclosed and if it was denied what the applicant has to do. Mr. Weiner stated they would have to take off the front wall if the application is denied.

Mr. Lemire asked if an Air bnb counted as a business. Mr. Reese stated it is not and neither is Verbo in the Town Code. He stated that you can have up to 3 unrelated people living together sharing a kitchen and living space.

Mr. Lemire asked that the motion and the second include the condition from the deed. Mr. Weiner stated the deed already has it and if the condition is met then it would be satisfied and needs to stay on the deed so if there is a change in ownership or the deed is changed the variance is void and the porch needs to be removed.

Mr. Brockbank moved, second by Mr. Styles, to approve the variance as requested. The property is located at 514 Vischer Ferry Road, Clifton Park, NY.

Mr. Brockbank read the Area Variance Criteria, Mr. Brockbank answered in favor to all 5 criteria.

The Secretary called the Vote:

**Ayes: 5**

**Noes: 2        Mr. Lemire, Mr. Dudick**

**New Business:**

None

The chairman made a motion to approve the minutes from the September 17, 2024 meeting. All who were present at the September 17, 2024 meeting voted in favor and the meeting minutes were approved.

Mr. Dudick, Chairman, made a motion to adjourn the meeting, Mr. Febo second, all voted in favor and approval was unanimous. The meeting was adjourned at 7:59 p.m.

The next scheduled ZBA meeting will be held on November 19, 2024.

Respectfully submitted,

*Paula Cooper*

Paula Cooper

Secretary, Zoning Board of Appeals

# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit C**

**Title:** Photographs of Property Condition (Siding separation, unsafe stairs, overgrown grounds, vacancy indicators)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.














# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit D**

**Title:** Victim/Witness Verification Form – Receipt Confirmation (USAO confirmation that victim submission was received)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.

# Victim Restitution Packet – Meikka C. Norman

United States v. Julio Medina, Weihong Hu, and Christopher Dantzler
Case No. 25-CR-54 (E.D.N.Y.)

Property: 514 Vischer Ferry Road, Clifton Park, NY 12065 – Parcel 270.-2-34

Meikka C. Norman is a verified victim under the pending federal case
United States v. Julio Medina, Weihong Hu, and Christopher Dantzler (25-CR-54 E.D.N.Y.), and submits
this packet to the U.S. Attorney's Office, Victim/Witness Unit, in support of restitution, equitable credit,
and caretaker preservation requests related to
514 Vischer Ferry Road, Clifton Park, NY 12065 (Parcel 270.-2-34).

# Table of Contents:

1. DOJ Victim Verification Form (pg. 2)

2. Personal Impact Declaration  (pg. 3)

3. DOJ Restitution & Right-to-Purchase Paragraph (pg. 4)

4. Victim Petition for Restitution and Right to Purchase (pg. 5-6)

5. Restitution & Equitable Credit Summary **Exhibit A** (pg. 7)

6. Financing Differential **Exhibit B** (pg. 8)

7. Equity-Loss **Exhibit C** (pg. 9)

8. Event **Exhibit D** (pg. 10)

9. Transportation & Relocation Loss **Exhibit E** (pg. 11)

10. Email Correspondence with John Scavo **Exhibit F** (pg. 12-19)

11. Purchase contract, lease, promissory note 514-Vischer Ferry **Exhibit G**(pg. 20-37)

12. Caretaker Occupancy and Preservation Agreement **Exhibit H** (pg. 38-44)

# VICTIM-WITNESS VERIFICATION FORM

**IF YOU BELIEVE YOU ARE A VICTIM IN ONE OF THE CASES LISTED ON THIS WEBSITE, PLEASE PRINT THIS FORM OUT AND COMPLETE WITH THE FOLLOWING INFORMATION. RETURN THE FORM TO THE ADDRESS OR FAX NUMBER LISTED AT THE BOTTOM OF THIS PAGE.**

To: UNITED STATES ATTORNEY'S OFFICE

VICTIM-WITNESS UNIT

From: Name __**MEIKKA C. NORMAN**_____
<span style="font-size:smaller">(If you are the not the victim, provide the name of the victim, company and/or estate you are representing.)</span>

     Title/Company Name (if appropriate)
     _____**HIGHLY FAVORED MANAGEMENT, INC**_____

     Address __**83 HAIGH AVE**_____
      __**SCHENECTADY, NY 12304**_____
     Contact numbers:
      Home Telephone # _____
      Cell # **518-878-1154**_____
      Email address _**MEIKKANORMAN@GMAIL.COM**_____

**RE:United States v. _JULIO MEDINA, WEIHONG HU,CHRISTOPHER DANTZLER**

**Criminal Docket No.: 25-CR-54_____     USAO # _____**

Please provide information as to how you believe you were victimized in this case. If you are claiming financial loss, it may be necessary to provide appropriate documentation. **I was in a signed contract to purchase the property at 514 Vischer Ferry Road before the defendants obtained it using stolen funds. Their actions directly prevented my purchase and caused significant financial and emotional harm, including loss of equity opportunity, relocation expenses, and instability for my family. I also incurred ongoing rental costs and additional expenses due to their criminal conduct_**

Estimated Amount of Loss: __**$834,500-$876,000**_____

Approximate date(s) of victimization: From __**8/2022**_____ to ___**PRESENT**_____

(Our office will contact you if we need any further information and/or documentation.)

**THE ABOVE INFORMATION IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF. RETURN THIS FORM TO:**

    <u>By Mail:</u> ATTN: Victim/Witness Unit - **WEBSITE FORM**
      United States Attorney's Office -EDNY
      271 Cadman Plaza East, Brooklyn, NY 11201

 **Gmail**

**Mimi Norman <meikkanorman@gmail.com>**

---

## Follow up : U.S. v. Christopher Dantzler , et al Case No. 1:25-cr-00054 (RPK)-Caretaker Occupancy & Preservation Proposal – Request for DOJ Non-Objection

2 messages

---

**Mimi Norman** <meikkanorman@gmail.com>              Thu, Nov 6, 2025 at 12:46 PM
To: Eric.Silverberg@usdoj.gov, Meredith.Arfa@usdoj.gov, Sean.Sherman@usdoj.gov

Follow-Up on Caretaker Occupancy Request – 514 Vischer Ferry Rd (1:25-cr-00054)

Dear Mr. Silverberg,

I am following up on my **October 29, 2025** submission regarding caretaker occupancy for 514 Vischer Ferry Road, Clifton Park, NY in United States v. Dantzler et al., 1:25-cr-00054.

Could you **please confirm receipt** of my materials and advise whether the government has any **objection or no objection** to my caretaker and emergency occupancy request?

Freezing temperatures are expected this weekend, and the property is currently vacant and unmaintained, which increases the risk of pipe bursts, structural damage, and preventable deterioration. For this reason, I urgently need to obtain a Temporary Certificate of Occupancy (TCO) from the Town of Clifton Park so I can legally enter, heat, occupy and protect the property.

Seven business days from my original submission is **Friday, November 7, 2025**, and I would appreciate a response by that date so I can coordinate the TCO inspection and take immediate steps to secure the property for winter.

Thank you for your time and consideration.

Respectfully,

11/13/25, 3:49 PM

Gmail Follow up : U.S. v. Christopher Dantzler , et al Case No. 1:25-cr-00054 (RPK)- Caretaker Occupancy & Preservation Prop…

Meikka C. Norman

83 Haigh Avenue

Schenectady, NY 12304

(518) 878-1154

meikkanorman@gmail.com

---------- Forwarded message ---------
From: **Mimi Norman** <meikkanorman@gmail.com>
Date: Wed, Oct 29, 2025 at 1:49 PM
Subject: U.S. v. Christopher Dantzler , et al Case No. 1:25-cr-00054 (RPK)- Caretaker Occupancy & Preservation
Proposal – Request for DOJ Non-Object-ion
To: <Eric.Silverberg@usdoj.gov>
CC: <Sean.Sherman@usdoj.gov>, <Meredith.Arfa@usdoj.gov>

Re: U.S. v. Christopher Dantzler , et al
Case No. 1:25-cr-00054 (RPK)

Dear Assistant U.S. Attorney Silverberg:

I am submitting my Victim Impact Statement, Restitution Exhibits, and Petition for Restitution and Right to
Purchase related to the property located at 514 Vischer Ferry Road, Clifton Park, New York. This submission
includes documentation of my financial losses, equity harm, relocation expenses, and emotional impact due to
the defendants' criminal conduct.

In addition, I am submitting a Proposed Caretaker and Purchase Option Agreement for your review and non-
objection. The titled owners have been non-responsive; however, I am requesting authorization to maintain and
occupy the vacant property under a Temporary Certificate of Occupancy issued by the Town of Clifton Park. This
will ensure the property is preserved and protected from further deterioration during pending proceedings. I
have also attached the unpaid water and taxes bills, and water shut off notice.

Please confirm receipt of these materials and advise if any additional information or forms are required to
complete my restitution and property preservation requests. I am available at your convenience for clarification
or further documentation.

Respectfully submitted,

**Meikka C. Norman**
_____
Meikka C. Norman
83 Haigh Avenue
Schenectady, NY 12304
(518) 878-1154
meikkanorman@gmail.com

| | unpaid water bill 514.pdf |

| | water shut off notice 514.pdf |

**7 attachments**

**usao memo.pdf**
574K

**signed EMERGENCY OCCUPANCY AND PRESERVATION REQUEST.pdf**
68K

**notarized affidavit of interest affecting real property.pdf**
128K

**Caretaker occupancy and preservation agreement.pdf**
2138K

**Final Victim Restitution Packet - Meikka C. Norman.pdf**
16941K

**2024-2025 unpaid school taxes.pdf**
9K

**2025-2026 unpaid school taxes.pdf**
13K

---

**Silverberg, Eric (USANYE)** <Eric.Silverberg@usdoj.gov>                    Thu, Nov 6, 2025 at 3:09 PM
To: Mimi Norman <meikkanorman@gmail.com>, "Arfa, Meredith (USANYE)" <Meredith.Arfa@usdoj.gov>, "Sherman, Sean (USANYE)" <Sean.Sherman@usdoj.gov>

Ms. Norman,

I am confirming receipt of your materials.  We take no position on your caretaker and emergency occupancy request.

Eric

[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit E**

**Title:** Caretaker Qualifications ( REO preservation experience, Fannie Mae work history,NVMS etc.)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.

# STATE OF NEW YORK

# DEPARTMENT OF STATE

     I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on July 17, 2018.

Brendan W. Fitzgerald
Executive Deputy Secretary of State

Rev. 06/07

# CERTIFICATE OF INCORPORATION
## OF
## Highly Favored Management, Inc.
Under Section 402 of the Business Corporation Law

I, the undersigned, a natural person of at least 18 years of age, for the purpose of forming a corporation under Section 402 of the Business Corporation Law of the State of New York hereby certify:

**FIRST:** The name of the corporation is:

**Highly Favored Management, Inc.**

**SECOND:** This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

**THIRD:** The county, within this state, in which the office of the corporation is to be located is SCHENECTADY.

**FOURTH:** The total number and value of shares of common stock which the corporation shall have authority to issue is: 200 SHARES WITH NO PAR VALUE.

**FIFTH:** The Secretary of State is designated as agent of the corporation upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the corporation served upon him or her is:

MEIKKA NORMAN
83 HAIGH AVENUE
SCHENECTADY, NY 12304

**SIXTH:** The corporation designates the following as its registered agent upon whom process against it may be served within the State of New York is:

MEIKKA NORMAN
83 HAIGH AVENUE
SCHENECTADY, NY 12304

**SEVENTH:** The existence of the corporation shall begin  upon filing of these Certificate of Incorporation with the Department of State.

**EIGHTH:** The corporation shall have a perpetual existence.

**NINTH:** No Director of this corporation shall be personally liable to the corporation, or its shareholders for damages for any breach of duty in such capacity, provided that this provision shall not limit the liability of any director if a judgment or other final adjudication, adverse to him, establishes that his act or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained in fact a financial profit or other advantage, to which he was not legally entitled or that his acts violated Section 719 of the New York Business Corporation Law.

**TENTH:** The holders of any of the corporation's equity shares shall be entitled to preemptive rights in accordance with the provisions of BCL section 622.

I certify that I have read the above statements, I am authorized to sign this Certificate of Incorporation, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

MEIKKA C. NORMAN  (signature)

MEIKKA C.  NORMAN, INCORPORATOR
83 HAIGH AVENUE
SCHENECTADY, NY 12304

**Filed by:**
MEIKKA C. NORMAN
83 HAIGH AVENUE
SCHENECTADY, NY 12304

**FILED WITH THE NYS DEPARTMENT OF STATE ON: 07/17/2018
FILE NUMBER: 180717010538; DOS ID: 5377256**

Page 2 of 2



# [NY52523] HIGHLY FAVORED MANAGEMENT, INC
## Total Zip Areas: 261 | Contractors: 0

Profile

Filter:

| Action | Type | Max Open | Description |
|--------|------|----------|-------------|
| | 360 Photos | | Special 360 Panoramic camera needed for these inspections |
| | Altisource | | Altisource Services |
| | Appraisal | | Home or land Appraisal that must be done by a state-licensed Appraiser. |
| | Broker Price Opinion | | BPO performed by a licensed Real Estate Broker |
| | Clayton Repairs | | Clayton Repairs |
| | **Collection** | **20** | **These orders typically involved delivering Delinquency letters to homeowner who are behind on their mortgage or mobile home payments. Most of these request simply involve printing a form letter (from the order), and taking it to the home. In most cases, the Rep is asked to either hand it to the occupant, or to leave it in an enveloped marked "Confidential" if nobody is home. Rarely is a Rep asked to have detailed conversations with the contact person.** |
| | Commerical Inspections | | Commercial property inspections |
| | Desktop Appraisal | | Desktop Appraisal |

| | | |
|---|---|---|
| **Draw Inspection** | **10** | **Inspect completed items in list.** |
| **Drive-By** | **30** | **Normally an exterior-only inspection of a property, which requires photos taken from the street or front of the property. Owner contact is minimal, but Rep must be prepared to represent themselves and the client if approached.** |

| | | |
|---|---|---|
| Evictions | | Gaining Access: Access the home without causing damage to the home or entryway. o You will meet the local Sheriff at the appointed time on the report to complete the lock change and hang the lockbox to provide future access. o Be equipped to either pick or remove the doorknob with appropriate tools. o If necessary, you should drill-out a deadbolt and/or knob, as you will be placing a new knob on the door. If there is a deadbolt in place, you should remove it and put a blank plate over the hole, or you should disable the deadbolt so it cannot be relocked. • Please change all entry door locks Entry Door Knob (available at Lowes and Home Depot). See photo below. • Put all keys in the lockbox and be sure to note on the report what the lockbox code is. All debris/personal property must be removed according to the instructions on the report and the Sheriff/local authority. • The Sheriff/local authority will advise where to place the personal effects once removed from the property. Most likely this will call for the debris and personal property to be removed to the curb for a period of time. THIS DOES NOT APPLY IF THE DEBRIS IS LEFT INSIDE THE PROPERTY THE DAY OF EVICTION. • The debris/personal property will likely need to sit for a period of time designated by the sheriff (sometimes up to 24 hours) at which point you will return to remove whatever is left and transport it to the dump• Property must be free of all debris and in broom swept clean condition. One cubic yard is 3 feet, by 3 feet, by 3 feet (approximately the size of a standard washing machine |
| **FNMA OCC** | **200** | **Fannie Mae Occupancy Inspections** |
| **FNMA QC** | **200** | **FNMA QC** |

| | | |
|---|---|---|
| Guaranteed Delivery | 20 | A time-sensitive commercial site that has specific DATE and TIME delivery deadlines. Visit is to verify the legitimacy of a business, typically ordered on behalf of a cash advance company. |
| IM Scanning | | HERO scanning kit required for these inspections |
| Keystone BPO | | Keystone BPO |
| License Required - Electrician | 10 | Services that can only be performed by a licensed electrician. Current license and insurance documents must be provided to NVMS and kept on file. |
| License Required - General Contractor | | Services that can only be performed by a licensed General Contractor. Current license and insurance documents must be provided to NVMS and kept on file. |
| License Required - Home Repair | | Services that can only be performed by a licensed contractor equipped to perform various types of home repair. Current license and insurance documents must be provided to NVMS and kept on file. |
| License Required - Mold Remediation | | Services that can only be performed by a licensed mold remediation company. Current license and insurance documents must be provided to NVMS and kept on file. |
| License Required - Other | | Services that can only be performed by a licensed contractor. Current/applicable license and insurance documents must be provided to NVMS and kept on file. |
| License Required - Pest Control | | Services that can only be performed by a licensed pest control/treatment company. Current license and insurance documents must be provided to NVMS and kept on file. |

| | | |
|---|---|---|
| License Required - Plumber | | Services that can only be performed by a licensed plumber. Current license and insurance documents must be provided to NVMS and kept on file. |
| License Required - Pool Contractor | | Services that can only be performed by a licensed pool contractor. Current license and insurance documents must be provided to NVMS and kept on file. |
| Luxottica | | Sunglass space inspections |
| **Merchant Site Inspection** | **5** | **A site visit of a business (may be commercial or homebased) to verify the business is open, operating and legitimate. Typically ordered by credit card processing companies.** |
| MVR Report | | Motor vehicle report is required to perform these types of inspections. |
| **Mystery Shopper/Terminal Verification** | **5** | **A time-sensitive commercial site visit that has specific DATE and TIME delivery deadlines. Visit will require making a purchase with a Visa or MasterCard, typically on behalf of a cash advance company.** |
| Permit Validation | | Permit Validation |
| **Preservation - Lawn Care** | **20** | **Orders are to complete lawn care services (grass cutting and edging, shrub maintenance, and removal of clippings) per each client's standards.** |
| **Preservation - Maid Service** | **20** | **Orders are to perform janitorial (maid) services on vacant homes. Reps must be equipped to provide water and power if needed, and must be able to meet all client's expectations for interior cleaning.** |

| | | |
|---|---|---|
| Preservation - Pool Maintenance | | Orders will typically be for someone to drain, clean refill pools on vacant homes, and will likely require ongoing treatment and maintenance. |
| **Preservation - Securing** | **20** | **Orders are to ensure vacant homes are secure and accessible. Rep must be equipped to properly remove and/or disable existing locks and install new locks as required by the client.** |
| **Preservation - Snow Removal** | **20** | **Orders are to perform snow removal services on properties, which may include plowing, snow-blowing, shoveling and spreading ice-melt, depending on client requirements.** |
| **Preservation - Trash-Out** | **20** | **Orders are to perform debris removal services (interior and exterior), where all trash is properly removed and disposed of. Trash can never be left on site for someone else to remove at a later date.** |
| **Preservation - Winterization** | **20** | **Orders are to properly Winterize a vacant home per client and NVMS standards.** |
| **Property Inspection - Contact Required** | **20** | **A site visit that will involve an inspection of a property, and will likely require contact with someone on site. Rep must be appropriately dressed, have all necessary forms to answer questions, and should always have appropriate ID and NVMS Badge.** |
| **Property Inspection - No Contact** | **20** | **A site visit that will involve an inspection of a property, and should not require contact with anyone on site. Rep should be appropriately dressed, have necessary forms and ID if questioned by anyone on site.** |
| **Quality Control Inspection (HV)** | **20** | **Inspection of a vacant property to ensure it is being maintained per the client's standards.** |

| | | |
|---|---|---|
| Real Estate Agent | | Any order that would require being completed by a licensed Real Estate Agent or Broker. |
| **Repair Inspection** | **20** | **Inspect and report on repairs items in a home.** |
| **Residential Inspection** | **20** | **Residential Inspection** |
| **Sign Installation** | **20** | **These orders will require a Rep to deliver and install signage on or in a property. Signs are typically shipped directly to the Rep. The Rep must be equipped to properly transport and install the signs per the instructions on the order.** |
| **TRUE Turnaround** | **20** | **True hourly turnaround jobs (Not Business days)** |
| **Vending Machine Services** | **20** | **Maintain and fill various typs of vending machines.** |

# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit F**

**Title:** Tax Delinquency Documentation (Saratoga County tax records showing outstanding taxes)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.

## Tax Bill Information

**Shenendehowa Central School 2025-2026 School Tax Notice**
**Tax & Finance School Code: 581**

DANTZLER CHRISTOPHER JAMES
MEDINA PRISCILLA
514 VISCHER FERRY RD

### PROPERTY DESCRIPTION

SBL/MAP: 270.-2-34
BILL#: 004093
ADDRESS: 514 Vischer Ferry Rd
TOWN: Clifton Park
SWIS: 412400
PROPERTY CLASS: 1 Family Res

ESCROW CODE:

### ASSESSMENT INFORMATION

| | |
|---|---:|
| Full Value: | 893,056.00 |
| Assessed Value: | 321,500.00 |
| (pre STAR) Taxable Value: | 321,500.00 |
| Uniform Percentage: | 36 |

| Description | Rate/$1000 | Non-Homestead Rate/$1000 | Total Due |
|---|---|---|---:|
| School Tax: | 33.73925 | | 10,847.17 |
| **Total Tax:** | | | **10,847.17** |

| Exemption | Ex Amt | Ex Full Amt |
|---|---|---|

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### SEND STUB WITH PAYMENT

**Shenendehowa Central School 2025-2026 School Tax Notice**

| If Paid By | Penalty % | Penalty | Total Due | |
|---|---|---|---|---|
| **09/30/2025** | **0.00%** | **0.00** | **10,847.17** | Mark here [ ] for receipt |
| 10/31/2025 | 2.00% | 216.94 | 11,064.11 | |

DANTZLER CHRISTOPHER JAMES
270.-2-34

MAKE CHECKS OR MONEY ORDERS PAYABLE TO: Shenendehowa CSD Taxes

MAIL PAYMENT WITH REMITTANCE STUB TO: Shenendehowa CSD
PO Box 22009
Albany NY 12201

TAXES WILL BE RECEIVED AT KeyBank branch Northway Exit 9 (Rt 9 & 146) - NIGHTDROP which is available 24/7 (no cash);
Shenendehowa District Office, 5 Chelsea Place
DROP BOX ONLY (no cash) during business hours 9-4

PARTIAL PAYMENTS Partial payments of at least 25% of original bill will be accepted by mail only.
2% penalty will apply on 10/01/2025.
Unpaid balance will be returned to the County Treasurer on 11/01/2025

CASH PAYMENTS may be made by
APPOINTMENT ONLY - Must call to schedule during business hours 9-4
Telephone (518)881-0625

PENALTIES OR FEES SEPT 2, 2025- SEPT 30, 2025
NO PENALTY
OCT 1, 2025- OCT 31, 2025
2%

TAXES CAN ALSO BE PAID
ONLINE AT WWW.SHENET.ORG

Last Updated: 10/29/2025 1:10 AM

Date printed: 10/29/2025

*2025-004093-1-581*



# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit G**

**Title:** Utility Shut-Off / Vacancy Evidence (Photos, screenshots, or notices confirming vacancy and risk of deterioration)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.





# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit H**

**Title:** Notice Packet Delivered to Priscilla Medina (Copy of handwritten delivery notice + timestamped text confirmation)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.



**New iMessage**                    Cancel

To: Priscilla

From: 🅿 Primary

Fri, Oct 3 at 10:50 AM

Gm 😊 I have heard from you in a bit. I am still very interested in the house. If there is some else in can talk to about it can you please give me their number or forward mine.

As I property inspector I see what happens to house that sit vacant especially with winter coming. Between the maintenance and taxes that are due it can be a lot .

Sun, Oct 5 at 4:00 PM

Hi - hope all is well.
We are going to keep things as they are for now. If anything changes you will be the first to know

Tue, Oct 7 at 11:20 AM



iMessage



**New iMessage**    Cancel

To: Priscilla

From: 🅿️ Primary

Tue, Oct 7 at 11:20 AM

🥺 but ok, I love that house with winter coming , and taxes due . I do property work for a living and I've seen what can happen to houses that aren't lived in and back taxes. You probably know but just in case don't forget to winterize. and please let me know . 🤗

Tue, Oct 28 at 2:07 PM

Hey 🤗 it's Mimi. I need to speak to you today about the house. I found out some good information that would be great... and legal for everyone involved. I am filing the papers with Doj, and Usao . I have one for you too.

I am headed to clifton park about it 3. . Would love to chat with you for a second in person. But either

iMessage





4:10

**New iMessage**                    Cancel

To: Priscilla

From: **P** Primary

> I am headed to clifton park about it 3. . Would love to chat with you for a second in person. But either way I am going to leave a copy for you in the mailbox at your house.
>
> Hope all is well.
>
> Mimi

Tue, Oct 28 at 4:44 PM

Hi Mimi please don't fill out any thing for me. I am not doing anything with the house at this time.

I am not renting out the house or selling the house

Tue, Oct 28 at 5:53 PM

> My apologies I didn't word that correctly . I am not filling out

iMessage



**New iMessage**    Cancel

To: Priscilla

From: P Primary

My apologies I didn't word that correctly . I am not filling out anything for you. I meant I have a copy of it for you. That's all.

I put a copy of the paperwork in your mailbox. Along with the no objections form I need from you. It's easier to explain that to type but I'll try.

According to the indictment you're right, you can't rent or sell the house at this time. But you are required to maintain it in its current condition. Which means, taxes utilities lawn care snow removal etc .

Under the Dept of justice and federal laws , especially because I am considered a victim. I can apply to occupy the property and be the caretaker until the us





4:10

**New iMessage**    Cancel

To: Priscilla

From:  Primary

Under the Dept of justice and federal laws , especially because I am considered a victim. I can apply to occupy the property and be the caretaker until the us attorney forfeits the property. I can be also first in line to purchase the property as well.

If I am the caretaker, I take over all responsibility for the  property pay the taxes , maintain utilities, lawn care snow care. I can even apply and get the certificate of occupancy and do the work to pass inspection. All while being able to live on the property.

Of course this all goes through the doj and gets approved by the usao . So it doesn't violate the indictment and trigger more charges. The same paperwork I left for you I am sending to chris attorney. The doi and the usaa

 iMessage



To: Priscilla

From: **P** Primary

usao . So it doesn't violate the indictment and trigger more charges. The same paperwork I left for you I am sending to chris attorney. The doj, and the usao.

It's kind of a win win win for everyone, I get to be in my dream house, you and chris are no longer financially being responsible for maintaining a house your not living in and that is going to be taken, the doj and usao are happy because the don't have to hire someone to maintain it.

So I'm asking you to sign the no objection letter and email or text it back to me . It basically say you don't care. I still can't do anything with doj and usao approval but it just moves faster if you and chris don't object.





lol ok

No I will not sign the acknowledgment.

🐵 I mean no disrespect, the house is just sitting there vacant. You can't sell it or transfer it without them ending up with the another indictment like for the car. It says trial is not til October 2026, so that means y'all are gonna have to pay to maintain it until then.  The taxes are already behind. The court records show a federal version of a public defender for the newest indictment. So I thought this would be a blessing or a relief for you. It's not given me ownership of the property, it's just caretaker status until the case is final. And even if everyone's found not guilty , the house is still yours I

iMessage



4:11

**New iMessage**     Cancel

To: Priscilla

From: **P** Primary

another indictment like for the car. It says trial is not til October 2026, so that means y'all are gonna have to pay to maintain it until then.  The taxes are already behind. The court records show a federal version of a public defender for the newest indictment. So I thought this would be a blessing or a relief for you. It's not given me ownership of the property, it's just caretaker status until the case is final. And even if everyone's found not guilty , the house is still yours I just have paid to maintain it til then. Like a renter 
Again I mean no disrespect. I have already filed the paperwork so my assumption is you should be hearing from them directly. I wish you and your family nothing but the best.

Read 10/28/25

  iMessage

# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit I**

**Title:** Email Correspondence with USAO – 'Takes No Position' (EDNY Asset Forfeiture confirmation)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.

 Gmail

**Mimi Norman <meikkanorman@gmail.com>**

## Follow up : U.S. v. Christopher Dantzler , et al Case No. 1:25-cr-00054 (RPK)-Caretaker Occupancy & Preservation Proposal – Request for DOJ Non-Object-ion
2 messages

**Mimi Norman** <meikkanorman@gmail.com>                       Thu, Nov 6, 2025 at 12:46 PM
To: Eric.Silverberg@usdoj.gov, Meredith.Arfa@usdoj.gov, Sean.Sherman@usdoj.gov

Follow-Up on Caretaker Occupancy Request – 514 Vischer Ferry Rd (1:25-cr-00054)

Dear Mr. Silverberg,

I am following up on my **October 29, 2025** submission regarding caretaker occupancy for 514 Vischer Ferry Road, Clifton Park, NY in United States v. Dantzler et al., 1:25-cr-00054.

Could you **please confirm receipt** of my materials and advise whether the government has any **objection or no objection** to my caretaker and emergency occupancy request?

Freezing temperatures are expected this weekend, and the property is currently vacant and unmaintained, which increases the risk of pipe bursts, structural damage, and preventable deterioration. For this reason, I urgently need to obtain a Temporary Certificate of Occupancy (TCO) from the Town of Clifton Park so I can legally enter, heat, occupy and protect the property.

Seven business days from my original submission is **Friday, November 7, 2025**, and I would appreciate a response by that date so I can coordinate the TCO inspection and take immediate steps to secure the property for winter.

Thank you for your time and consideration.

Respectfully,

Meikka C. Norman

83 Haigh Avenue

Schenectady, NY 12304

(518) 878-1154

meikkanorman@gmail.com


---------- Forwarded message ---------
From: **Mimi Norman** <meikkanorman@gmail.com>
Date: Wed, Oct 29, 2025 at 1:49 PM
Subject: U.S. v. Christopher Dantzler , et al Case No. 1:25-cr-00054 (RPK)- Caretaker Occupancy & Preservation
Proposal – Request for DOJ Non-Object-ion
To: <Eric.Silverberg@usdoj.gov>
CC: <Sean.Sherman@usdoj.gov>, <Meredith.Arfa@usdoj.gov>


Re: U.S. v. Christopher Dantzler , et al
Case No. 1:25-cr-00054 (RPK)


Dear Assistant U.S. Attorney Silverberg:

I am submitting my Victim Impact Statement, Restitution Exhibits, and Petition for Restitution and Right to
Purchase related to the property located at 514 Vischer Ferry Road, Clifton Park, New York. This submission
includes documentation of my financial losses, equity harm, relocation expenses, and emotional impact due to
the defendants' criminal conduct.

In addition, I am submitting a Proposed Caretaker and Purchase Option Agreement for your review and non-
objection. The titled owners have been non-responsive; however, I am requesting authorization to maintain and
occupy the vacant property under a Temporary Certificate of Occupancy issued by the Town of Clifton Park. This
will ensure the property is preserved and protected from further deterioration during pending proceedings. I
have also attached the unpaid water and taxes bills, and water shut off notice.

Please confirm receipt of these materials and advise if any additional information or forms are required to
complete my restitution and property preservation requests. I am available at your convenience for clarification
or further documentation.

Respectfully submitted,

**Meikka C. Norman**
_____
Meikka C. Norman
83 Haigh Avenue
Schenectady, NY 12304
(518) 878-1154
meikkanorman@gmail.com

| | unpaid water bill 514.pdf |
| --- | --- |

| | water shut off notice 514.pdf |
| --- | --- |

**7 attachments**

**usao memo.pdf**
574K

**signed EMERGENCY OCCUPANCY AND PRESERVATION REQUEST.pdf**
68K

**notarized affidavit of interest affecting real property.pdf**
128K

**Caretaker occupancy and preservation agreement.pdf**
2138K

**Final Victim Restitution Packet - Meikka C. Norman.pdf**
16941K

**2024-2025 unpaid school taxes.pdf**
9K

**2025-2026 unpaid school taxes.pdf**
13K

---

**Silverberg, Eric (USANYE)** <Eric.Silverberg@usdoj.gov>                Thu, Nov 6, 2025 at 3:09 PM
To: Mimi Norman <meikkanorman@gmail.com>, "Arfa, Meredith (USANYE)" <Meredith.Arfa@usdoj.gov>, "Sherman, Sean (USANYE)" <Sean.Sherman@usdoj.gov>

Ms. Norman,

I am confirming receipt of your materials.  We take no position on your caretaker and emergency occupancy request.

Eric

[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit J**

**Title:** Service Attempts / Notice to Counsel (Email to attorney Greenspan + his objection, showing notice and refusal)

Submitted in support of the Emergency Motion for Caretaker Occupancy & Preservation Order.

 **Gmail**

**Mimi Norman <meikkanorman@gmail.com>**

---

## Final Notice – No Written Objection Received (514 Vischer Ferry Rd)
4 messages

---

**Mimi Norman** <meikkanorman@gmail.com>                                Fri, Nov 7, 2025 at 4:31 PM
To: ngreenspan@talkinlaw.com, samt@talkinlaw.com
Cc: info@talkinlaw.com, admin@talkinlaw.com, support@talkinlaw.com
Bcc: Mimi Norman <meikkanorman@gmail.com>

Dear Attorney Greenspan,

This serves as final notice regarding my caretaker occupancy and preservation request for 514 Vischer Ferry Road in U.S. v. Dantzler, 1:25-cr-00054 (E.D.N.Y.).

I provided written notice on October 29 and again on November 6, including the update that the DOJ did not object and stated they take no position on the request. Written objections were required within seven days.

The response period ended on November 7, 2025, and I have not received confirmation of representation, confirmation of receipt, or any written objection.

For the record, no written objection was received.

Thank you,

Meikka C. Norman

(518) 878-1154

meikkanorman@gmail.com

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                 Fri, Nov 7, 2025 at 4:32 PM
To: meikkanorman@gmail.com



**Address not found**

Your message wasn't delivered to **support@talkinlaw.com** because the address couldn't be found, or is unable to receive mail.

**LEARN MORE**

⚠ This link will take you to a third-party site

The response from the remote server was:

```
550 5.4.1 Recipient address rejected: Access denied. For more information see
```
https://aka.ms/EXOSmtpErrors `[CO1PEPF000044F5.namprd05.prod.outlook.com` `2025-11-07T21:32:04.731Z`
`08DE1A9D7BE86630]`

Final-Recipient: rfc822; support@talkinlaw.com
Action: failed
Status: 5.4.1
Remote-MTA: dns; talkinlaw-com.mail.protection.outlook.com.
 (2a01:111:f403:f807::, the server for the domain talkinlaw.com.)
Diagnostic-Code: smtp; 550 5.4.1 Recipient address rejected: Access denied. For more information see
https://aka.ms/EXOSmtpErrors [CO1PEPF000044F5.namprd05.prod.outlook.com 2025-11-07T21:32:04.731Z
08DE1A9D7BE86630]
Last-Attempt-Date: Fri, 07 Nov 2025 13:32:04 -0800 (PST)


---------- Forwarded message ----------
From: Mimi Norman <meikkanorman@gmail.com>
To: ngreenspan@talkinlaw.com, samt@talkinlaw.com
Cc: info@talkinlaw.com, admin@talkinlaw.com, support@talkinlaw.com
Bcc:
Date: Fri, 7 Nov 2025 16:31:50 -0500
Subject: Final Notice – No Written Objection Received (514 Vischer Ferry Rd)

Dear Attorney Greenspan,


This serves as final notice regarding my caretaker occupancy and preservation request for 514 Vischer Ferry Road in U.S. v. Dantzler, 1:25-cr-00054 (E.D.N.Y.).


I provided written notice on October 29 and again on November 6, including the update that the DOJ did not object and stated they take no position on the request. Written objections were required within seven days.

The response period ended on November 7, 2025, and I have not received confirmation of representation, confirmation of receipt, or any written objection.

For the record, no written objection was received.

Thank you,

Meikka C. Norman

(518) 878-1154

[meikkanorman@gmail.com](mailto:meikkanorman@gmail.com)

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                    Fri, Nov 7, 2025 at 4:32 PM
To: meikkanorman@gmail.com



## Address not found

Your message wasn't delivered to **admin@talkinlaw.com** because the address couldn't be found, or is unable to receive mail.

**LEARN MORE**
⚠ This link will take you to a third-party site

The response from the remote server was:

```
550 5.4.1 Recipient address rejected: Access denied. For more information see
https://aka.ms/EXOSmtpErrors [SJ5PEPF000001F0.namprd05.prod.outlook.com 2025-11-07T21:32:04.703Z
08DE18ECB2CDB10B]
```

Final-Recipient: rfc822; admin@talkinlaw.com
Action: failed
Status: 5.4.1
Remote-MTA: dns; talkinlaw-com.mail.protection.outlook.com.
 (2a01:111:f403:c902::1, the server for the domain talkinlaw.com.)
Diagnostic-Code: smtp; 550 5.4.1 Recipient address rejected: Access denied. For more information see
https://aka.ms/EXOSmtpErrors [SJ5PEPF000001F0.namprd05.prod.outlook.com 2025-11-07T21:32:04.703Z
08DE18ECB2CDB10B]
Last-Attempt-Date: Fri, 07 Nov 2025 13:32:04 -0800 (PST)

---------- Forwarded message ----------
From: Mimi Norman <meikkanorman@gmail.com>

To: ngreenspan@talkinlaw.com, samt@talkinlaw.com
Cc: info@talkinlaw.com, admin@talkinlaw.com, support@talkinlaw.com
Bcc:
Date: Fri, 7 Nov 2025 16:31:50 -0500
Subject: Final Notice – No Written Objection Received (514 Vischer Ferry Rd)

Dear Attorney Greenspan,


This serves as final notice regarding my caretaker occupancy and preservation request for 514 Vischer Ferry Road in U.S. v. Dantzler, 1:25-cr-00054 (E.D.N.Y.).


I provided written notice on October 29 and again on November 6, including the update that the DOJ did not object and stated they take no position on the request. Written objections were required within seven days.


The response period ended on November 7, 2025, and I have not received confirmation of representation, confirmation of receipt, or any written objection.


For the record, no written objection was received.


Thank you,

Meikka C. Norman

(518) 878-1154

meikkanorman@gmail.com


---

**Noam Greenspan** <ngreenspan@talkinlaw.com>                    Fri, Nov 7, 2025 at 4:46 PM
To: Mimi Norman <meikkanorman@gmail.com>, Sam Talkin <samt@talkinlaw.com>
Cc: Mark Muccigrosso <markm@talkinlaw.com>, "admin@talkinlaw.com" <admin@talkinlaw.com>, "support@talkinlaw.com" <support@talkinlaw.com>

Ms. Norman,

You have mischaracterized your previous emails to me which asked for my client's consent. You did not get that consent. Please provide me with the legal authority you claim gives you any right whatsoever to the property unless there is an objection.

Otherwise, consider this my objection and please don't contact me again.

Noam


---

**From:** Mimi Norman <meikkanorman@gmail.com>
**Sent:** Friday, November 7, 2025 4:31:50 PM
**To:** Noam Greenspan <ngreenspan@talkinlaw.com>; Sam Talkin <samt@talkinlaw.com>
**Cc:** Mark Muccigrosso <markm@talkinlaw.com>; admin@talkinlaw.com <admin@talkinlaw.com>; support@talkinlaw.com <support@talkinlaw.com>
**Subject:** Final Notice – No Written Objection Received (514 Vischer Ferry Rd)

[Quoted text hidden]

# EXHIBIT COVER SHEET

**United States v. Medina, Hu & Dantzler**
Case No. 1:25-cr-00054 (E.D.N.Y.)

**Exhibit K**

Title: Indictment & Superseding Indictment Excerpts Identifying the Property

 Description: This exhibit contains the portions of the original and superseding indictments that identify 514 Vischer Ferry Road as forfeitable property, including Paragraph 17 and the new Count Six allegations.

 Submitted in support of the Emergency Motion for Caretaker Occupancy and Preservation Order.

RCH:MAA/EWS/SMS
F. #2021R00664

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JULIO MEDINA,
CHRISTOPHER DANTZLER and
WEIHONG HU,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
\*    SEPTEMBER 16, 2025    \*
BROOKLYN OFFICE

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 25-54 (S-1) (RPK)
(T. 18, U.S.C., §§ 371, 924(d)(1),
  981(a)(1)(C), 982(a)(1), 982(b)(1),
  1343, 1346, 1349, 1512(c)(1), 1512(i),
  1952(a)(3)(A), 1956(h), 2 and 3551 et
  seq.; T. 21, U.S.C., § 853(p); T. 28,
  U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

        At all times relevant to this Superseding Indictment, unless otherwise indicated:

INTRODUCTION AND OVERVIEW

        1.      In the midst of the outbreak of the novel coronavirus, SARS-CoV-2 ("Covid-19"), New York City provided tens of millions of dollars to a non-profit organization to administer an emergency transitional housing program (the "Emergency Housing Program"), in partnership with local hotels and other businesses, to combat the spread of Covid-19 in New York City jails.   Under the Emergency Housing Program, inmates were released to New York City hotels and offered various reentry services, including mental health, security, job training and food services.   Through kickbacks and bribes, the defendants JULIO MEDINA, CHRISTOPHER DANTZLER and WEIHONG HU capitalized on the Covid-19 crisis and exploited the Emergency Housing Program by engaging in a corrupt scheme to line their own pockets with millions of dollars intended to protect the public.   When HU and MEDINA

became aware of the details of the government's grand jury investigation into their criminal

scheme, they worked together to conceal evidence of their crimes from law enforcement and

thereby obstruct both that grand jury investigation and any future criminal proceedings against

them.

### The Emergency Housing Program

2.      In or around April 2020, New York City developed the Emergency

Housing Program to help curb the spread of the Covid-19 pandemic.   Under the Emergency

Housing Program, inmates were released from local prisons and housed in hotels in New York

City, including in Brooklyn and Queens.   Beginning in or around June 2020, the New York City

Mayor's Office of Criminal Justice ("MOCJ") contracted with a non-profit organization, the

identity of which is known to the Grand Jury (together with its affiliates, the "Organization") to

operate the Emergency Housing Program.

### The Defendants and Relevant Entities

3.      The defendant JULIO MEDINA founded and served as the executive

director and chief executive officer of the Organization.   MEDINA participated in various

public service roles in connection with his work with the Organization.   For example, between

approximately October 2021 and November 2022, MEDINA served as a member and, at times,

the acting chair of New York City's Board of Correction, a panel that regulated and oversaw

New York City's jails.

4.      The Organization provided various reentry services to formerly

incarcerated individuals.   Following its selection by MOCJ to operate the Emergency Housing

Program, the Organization entered into agreements with various hotels to operate as reentry

hotels under the Emergency Housing Program (collectively, the "Program Hotels").   In total,

between in or about June 2020 and December 2023, the Organization received approximately

$122 million in public funds from MOCJ to operate the Emergency Housing Program at the

Program Hotels.

      5.     The defendant CHRISTOPHER DANTZLER served as the president of a

company, an entity the identity of which is known to the Grand Jury, that purported to provide

the Organization with security services at the Program Hotels (together with its affiliates, "the

Security Company") pursuant to the Emergency Housing Program.   Prior to serving as the

president of the Security Company, DANTZLER worked as an electrician.

      6.     The Security Company began operating in or around November 2020,

only a few months after the Organization began operating the Emergency Housing Program.

The Security Company was not a licensed security company and did not directly provide security

services.   Rather, the Security Company subcontracted with other security firms to provide

security services for the Program Hotels.   Between approximately January 2021 and May 2022,

the Security Company received approximately $21 million in public funds from the Organization

for purportedly providing security services at the Program Hotels, despite not actually providing

any security services itself.   Of that amount, the Security Company paid only approximately $12

million to subcontractors who actually provided security services at the Program Hotels; the

defendant CHRISTOPHER DANTZLER personally retained the remaining $9 million in public

funds.

      7.     The defendant WEIHONG HU operated and/or controlled several hotels

in New York City, including two hotels in Queens (collectively, the "HU Hotels") that operated

as Program Hotels under the Emergency Housing Program.   Between in or about October 2021

and November 2023, the HU Hotels received approximately $12 million in public funds from the Organization for their participation in the Emergency Housing Program as Program Hotels.

8.    The defendant WEIHONG HU also served as a member of a company that provided food services to formerly incarcerated individuals residing at the Program Hotels under the Emergency Housing Program, including at the HU Hotels (together with its affiliates, "the Catering Company," and collectively with the HU Hotels, the "HU Businesses").   Before the Emergency Housing Program was created, the Catering Company had operated as a construction company.   In or about September 2020, HU, together with others, repurposed the Catering Company as a food services business so the defendants and their co-conspirators could obtain additional public funds under the Emergency Housing Program.   Between in or about September 2020 and July 2023, the Catering Company received approximately $17 million in public funds from the Organization for providing food services to the Program Hotels pursuant to the Emergency Housing Program.

<u>The Defendants' Criminal Scheme</u>

9.    In or about and between April 2020 and December 2024, the defendants conspired to corruptly divert millions of dollars that the Organization was receiving under the Emergency Housing Program to personally enrich themselves and their co-conspirators.

10.    During the relevant time period, the defendant JULIO MEDINA solicited and received bribes and kickbacks from the defendants CHRISTOPHER DANTZLER and WEIHONG HU in exchange for MEDINA providing business through the Organization to the Security Company and the HU Businesses under the Emergency Housing Program.

11.    These bribes and kickbacks took various forms, including hundreds of thousands of dollars in United States currency; financing for a luxury vehicle; payments towards

debts held by the defendant JULIO MEDINA and his family, including a mortgage; and the purchase of two homes, both which were made in the names of MEDINA's co-conspirators or entities associated with them, to conceal the nature and source of the bribes and kickbacks.

12.     For example, on or about September 11, 2020, the Organization prepared two checks made out to the Catering Business, for $103,600 and $84,000, respectively (collectively, the "Emergency Housing Program Checks").

13.     The following day, on or about September 12, 2020, the defendants JULIO MEDINA and WEIHONG HU met at one of the HU Hotels in Queens, New York.   That meeting was captured by surveillance cameras at the hotel.   As set forth in the pictures below, during the meeting HU took a wrapped stack of United States currency out of her wallet, put it into a manila envelope, and provided it to MEDINA, who put it into his bag.   During the same meeting, HU received what appear to be the Emergency Housing Program Checks from MEDINA.   Approximately two days later, the Emergency Housing Program Checks were deposited into a bank account associated with the Catering Company.









14.    In addition, in or about and between August 2021 and September 2021,

the defendant CHRISTOPHER DANTZLER, through the Security Company, paid

approximately $75,000 toward several debts incurred by the defendant JULIO MEDINA and members of his family, including a mortgage and a vehicle loan.

15.     In or about November 2021, the defendant WEIHONG HU, through one of the HU Businesses, financed a luxury vehicle for the defendant JULIO MEDINA valued at approximately $107,000 (the "Luxury Vehicle").   Thereafter, HU caused to be made a series of monthly payments toward the Luxury Vehicle for MEDINA, for a total of more than $50,000.

16.     In or about September 2022, the defendants CHRISTOPHER DANTZLER and WEIHONG HU purchased a town house for the defendant JULIO MEDINA in Washington Heights, New York, for approximately $1.3 million.

17.     In or about May 2023, the defendant CHRISTOPHER DANTZLER paid to purchase and renovate a house for the defendant JULIO MEDINA in Clifton Park, New York (the "House") for approximately $750,000.   In or about September 2024, DANTZLER executed an indenture causing the deed to the House to be amended to include one of MEDINA's family members as a tenant-in-common.

18.     As part of the scheme, the defendant JULIO MEDINA executed or caused to be executed multiple contracts with MOCJ on behalf of the Organization.   Some of the contracts that MEDINA executed included budgets setting forth the costs of administering the Emergency Housing Program.   The budgets were fraudulently inflated to account for the cost of the bribes and kickbacks to be paid to him by the defendants CHRISTOPHER DANTZLER and WEIHONG HU.   In turn, DANTZLER and HU submitted, or caused to be submitted, invoices from companies they controlled that concealed the payment of bribes and kickbacks.   These invoices were provided to MOCJ to obtain payment for the fraudulently invoiced services administered under the Emergency Housing Program.

19.     The defendants also took steps to conceal the criminal scheme, including from New York City officials.   On or about September 29, 2022, the defendant JULIO MEDINA emailed a document setting forth the Organization's responses to various queries from New York City officials scrutinizing the Organization's operation of the Emergency Housing Program, including one query asking whether "[the Organization] or any employee of [the Organization] or immediate family member (i.e., spouse/domestic partner, child, sibling, or parent of the employee) received anything of value from [the Security Company] or [the defendant CHRISTOPHER DANTZLER] directly or indirectly[.]"   The response sent by MEDINA falsely stated, "Other than the contracted services that [the Organization] received from [the Security Company] or [DANTZLER], [the Organization] does not have any awareness or knowledge that any employee of [the Organization] or immediate family member of [the Organization] employee received, directly or indirectly, anything of value from [the Security Company] or [DANTZLER]."

20.     The defendants and their co-conspirators discussed the fraudulent scheme using text messages and cellular phones.   For example, on or about May 22, 2023, as part of an exchange of text messages between the defendant JULIO MEDINA and an employee of the defendant WEIHONG HU concerning the payment of Emergency Housing Program funds, MEDINA wrote, "Don't call me no more.   I don't fucking trust you!   When I get the payment I will call you.   You have other people on the call.   You know I'm under investigation.   You are fucking with the wrong person!"

21.     In total, the defendants CHRISTOPHER DANTZLER and WEIHONG HU provided the defendant JULIO MEDINA with at least $2.5 million in United States currency

and in-kind benefits in exchange for MEDINA steering approximately $51 million in public

funds from the Emergency Housing Program to the Security Company and the HU Businesses.

22.     In or about February 2025, the defendants JULIO MEDINA and

WEIHONG HU learned details of the government's grand jury investigation into their criminal

scheme, including that the government was aware of HU's financing of the Luxury Vehicle for

MEDINA.   In order to conceal the evidence of their crimes and to obstruct the government's

grand jury investigation and any future criminal proceedings, HU and MEDINA, together with

others, caused the transfer and sale of the Luxury Vehicle.

COUNT ONE
(Wire Fraud Conspiracy)

23.     The allegations contained in paragraphs one through 22 are realleged and

incorporated as if fully set forth in this paragraph.

24.     In or about and between April 2020 and December 2024, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants JULIO MEDINA, CHRISTOPHER DANTZLER and WEIHONG HU, together with

others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud

MOCJ, and to obtain money and property from it by means of one or more materially false and

fraudulent pretenses, representations and promises, and for the purpose of executing such scheme

and artifice, to transmit and cause to be transmitted by means of wire communication in

interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title

18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
### (Honest Services Wire Fraud)

25.    The allegations set forth in paragraphs one through 22 are realleged and incorporated as if fully set forth in this paragraph.

26.    In or about and between April 2020 and December 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JULIO MEDINA, CHRISTOPHER DANTZLER and WEIHONG HU, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Organization of its intangible right to the honest services of MEDINA through bribery and kickbacks, to wit: one or more payments to MEDINA, and for the purpose of executing such scheme and artifice, the defendants, together with others, transmitted and caused to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: an email dated September 29, 2022 from MEDINA attaching a document titled "Risk Management Response 9-29-2022.docx."

(Title 18, United States Code, Sections 1343, 1346, 2 and 3551 et seq.)

## COUNT THREE
### (Conspiracy to Violate the Travel Act)

27.    The allegations contained in paragraphs one through 22 are realleged and incorporated as if fully set forth in this paragraph.

28.    In or about and between April 2020 and December 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JULIO MEDINA, CHRISTOPHER DANTZLER and WEIHONG HU, together with others, did knowingly and willfully conspire to use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion,

management, establishment and carrying on, of one or more unlawful activities, to wit:
Commercial Bribing in the Second Degree, in violation of New York Penal Law Sections 180.00
and 20.00, and Commercial Bribe Receiving in the Second Degree, in violation of New York
Penal Law Sections 180.05 and 20.00, and thereafter to perform acts to promote, manage,
establish, carry on and facilitate the promotion, management, establishment and carrying on, of
such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3).

29.     In furtherance of the conspiracy and to effect its objects, within the
Eastern District of New York and elsewhere, the defendants JULIO MEDINA, CHRISTOPHER
DANTZLER and WEIHONG HU, together with others, did commit and cause the commission
of, among others, the following overt acts:

<u>OVERT ACTS</u>

(a)     On or about September 11, 2020, the Organization prepared the
Emergency Housing Program Checks.

(b)     On or about September 12, 2020, HU and MEDINA met at one of
the HU Hotels in Queens, New York.

(c)     On or about September 12, 2020, HU gave MEDINA United States
currency during the meeting at one of the HU Hotels in Queens, New York.

(d)     On or about September 13, 2020, MEDINA deposited
approximately $3,000 in United States currency into his personal bank account.

(e)     On or about September 14, 2020, the Catering Business deposited
the Emergency Housing Program Checks into one of its bank accounts.

(f)    On or about September 17, 2021, DANTZLER issued or caused to be issued a check in the amount of $20,000 from a bank account associated with the Security Company, which was applied to an outstanding debt held by MEDINA.

(g)    On or about September 29, 2022, MEDINA emailed a document on behalf of the Organization to New York City officials containing misrepresentations about the Security Company.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT FOUR
(Use of Facility of Interstate Facilities in Aid of Bribery)

30.    The allegations contained in paragraphs one through 22 are realleged and incorporated as if fully set forth in this paragraph.

31.    In or about and between April 2020 and December 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JULIO MEDINA, CHRISTOPHER DANTZLER and WEIHONG HU, together with others, did knowingly and intentionally use one or more facilities in interstate and foreign commerce, to wit: (i) one or more cellular telephones, (ii) electronic mail and (iii) wire transfers, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, to wit: Commercial Bribing in the Second Degree, in violation of New York Penal Law Section 180.00, and Commercial Bribe Receiving in the Second Degree, in violation of New York Penal Law Section 180.05, and thereafter performed acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3)(A), 2 and 3551 et seq.)

## COUNT FIVE
### (Money Laundering Conspiracy)

32.     The allegations contained in paragraphs one through 22 are realleged and incorporated as if fully set forth in this paragraph.

33.     In or about and between April 2020 and December 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JULIO MEDINA, CHRISTOPHER DANTZLER and WEIHONG HU, together with others, did knowingly and intentionally conspire:

(a)     to engage in one or more monetary transactions within the United States in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property of a value greater than $10,000 and derived from one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a); and

(b)     to conduct one or more financial transactions, to wit: transactions in and affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions involved the proceeds of one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the

nature, location, source, ownership and control of the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT SIX
(Obstruction of Justice)

34.     The allegations contained in paragraphs one through 22 are realleged and incorporated as if fully set forth in this paragraph.

35.     On or about and between January 30, 2025 and February 15, 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JULIO MEDINA and WEIHONG HU, together with others, did knowingly, intentionally and corruptly alter, destroy, mutilate and conceal one or more records, documents and other objects, to wit: the Luxury Vehicle, with the intent to impair their integrity and availability for use in an official proceeding, to wit: a Federal Grand Jury investigation and trial in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(1), 1512(i) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE AND TWO

36.     The United States hereby gives notice to the defendants that, upon their conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

37.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

        (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THREE AND FOUR

38.    The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts Three and Four, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any violation of any other criminal law of the United States.

39.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

       (a)     cannot be located upon the exercise of due diligence;

       (b)     has been transferred or sold to, or deposited with, a third party;

       (c)     has been placed beyond the jurisdiction of the court;

       (d)     has been substantially diminished in value; or

       (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

      (Title 18, United States Code, Sections 924(d)(1) and 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## <u>AS TO COUNT FIVE</u>

40.     The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

41.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

       (a)     cannot be located upon the exercise of due diligence;

       (b)     has been transferred or sold to, or deposited with, a third party;

    (c)      has been placed beyond the jurisdiction of the court;

    (d)      has been substantially diminished in value; or

    (e)      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture

allegation.

          (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

               A TRUE BILL

                  /S/
               FOREPERSON

By *David Pitluck, Assistant U.S. Attorney*
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

## INFORMATION SHEET

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
*   SEPTEMBER 16, 2025   *
BROOKLYN OFFICE

1.  Title of Case:  United States v. Julio Medina and Weihong Hu   25-CR-54 (S-1) (RPK)

2.  Related Magistrate Docket Number(s): _____

3.  Arrest Date:   2/13/2025

4.  Nature of offense(s):   ☒  Felony
                            ☐  Misdemeanor

5.  Related Cases - Title and Docket No(s). (Pursuant to Rule 50.3.2 of the Local E.D.N.Y.
    Division of Business Rules):_____

6.  Projected Length of Trial:   Less than 6 weeks    ☒
                                 More than 6 weeks    ☐

7.  County in which crime was allegedly committed: Queens
    (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.  Was any aspect of the investigation, inquiry and prosecution giving rise to the case
    pending or initiated before March 10, 2012.[1]        ☐ Yes  ☒ No

9.  Has this indictment/information been ordered sealed?        ☐ Yes  ☒ No

10. Have arrest warrants been ordered?                          ☐ Yes  ☒ No

11. Is there a capital count included in the indictment?  ☐ Yes  ☒ No

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/ Eric Silverberg
      Meredith A. Arfa
      Eric Silverberg
      Sean M. Sherman
      Assistant U.S. Attorneys
      Eric.Silverberg@usdoj.gov
      718-254-6365

---

[1]   Judge Brodie will not accept cases that were initiated before March 10, 2012.

Rev. 1/11/25